## C. C. & St. L. Ry. Co. v. Dixon.

1. *Evidence—Burden of Proof.*—Under a declaration which charged negligence in not keeping the cars and machinery thereof in good repair, but which, on the contrary, " were out of repair, and not sufficient for the purposes used," it is incumbent upon the plaintiff to prove not only a defect in the machinery, but the defect that caused the injury. Merely proving that there was a defect is not sufficient; not only so, but under the averments of the declaration, the proof must show that the defect causing the injury was known to the defendant, or, by the exercise of reasonable care, it could have been known.

C., C. & St. L. Ry. Co. v. Dixon.

2. *Instructions—Departure from the Issue on Trial.*—Where a cause of action is based upon the want of repairs and knowledge of such condition, an instruction which states that the master of a railroad company, or employer, is bound to use reasonable care, skill and judgment, to furnish suitable machinery and implements properly constructed, and ordinarily skillful and trustworthy agents or workmen, and if the employer does not use such care, skill and judgment, and injury results therefrom to an employe, the employer will be responsible for such injury, is erroneous, because it makes his liability depend upon furnishing of machinery, properly constructed, which is not made an issue in the case, either by the pleadings or the evidence.

3. *Notice to an Employer—When Unnecessary.*—In an action for injuries, based upon an improper construction of machinery, a notice to the owner, etc., is not necessary; but it is otherwise in cases of a defect occasioned by use, or for want of repair.

4. *Instructions Governing the Law of Notice—Personal Injuries.*— In a case against a railroad company for injuries, based upon a want of repair of a coupler and notice of such condition, an instruction which states that if the plaintiff, while in the exercise of reasonable care, was injured while attempting to make a coupling, and that said injury was caused by reason of the coupler and the machinery connected therewith being out of repair, the jury should find for the plaintiff, is erroneous, because it ignores the law of notice and makes the liability depend solely on there being a defect at the time of the injury, and such defect being the cause thereof, without reference to when the defect occurred, or that by the exercise of reasonable care it would have been discovered by the company before the injury occurred.

5. *Instructions—Must Not Assume the Existence of Facts.*—In an action for the recovery of damages for personal injuries against a railroad company upon the ground that its machinery was out of repair, an instruction which apparently assumes such to be a fact is erroneous.

Memorandum.—Action for personal injuries. Appeal from a judgment rendered by the Circuit Court of Wabash County; the Hon. EDMUND D. YOUNGBLOOD, Judge, presiding. Heard in this court at the February term, A. D. 1892. Opinion filed September 8, 1893.

## STATEMENT OF THE FACTS BY THE COURT.

Appellee's left hand near the wrist was crushed between the deadwoods of two cars at St. Francisville, on the 4th day of July, 1891, while, as brakeman for appellant, he was attempting to make a coupling. The injury was so serious that the arm had to be amputated.

The declaration avers that " the couplers, by which said cars were fastened together, were out of repair and not suffi-

cient for the purpose used, and the defendant by the exercise of reasonable care could have known of said defect, and while the plaintiff was in the performance of his duty as brakeman, with due care and without knowledge of the condition of said machinery, he had his left hand caught by and in the machinery used for coupling the said cars together, thereby injuring him," etc.

The plaintiff had been a railroad man about twenty-five years, and describes the accident substantially as follows: when his train—a freight train—reached St. Francisville, some empty box cars had to be taken or moved from the side track. In doing so, there was a coupling to be made of the cars at the side track, which cars had iron deadwoods, located on each side of the draw bars and a little above.

The couplings on these cars were what are called Ames couplers—bull tongues, commonly called. Both of the couplers were alike, except that the still car, to the right, had no bull tongue in; the tongue was out entirely; while the car to the left—the moving car—had a bull tongue in. As the running car was slowly pushed back by the engine to make the coupling, he stepped in front of that car, with his left side rather toward the car, and moved back with it. Just before the cars came together, he reached over the dead-wood and caught hold of the iron pin, so as to push or drop it through the hole in the draw bar or draw head and the hole in the bull tongues, where the bull tongues should enter the draw head of the right, or still car, and thereby make the coupling. He did not have to adjust the bull tongue in the draw head of the left or moving car, so as to make it enter the aperture of the draw head of the right or still car, as the cars were of the same height. The bull tongue projected straight out from the draw head of the moving car and had a hole in it for the pin to drop through, thereby answering in the place of an ordinary car link. The pin which he had seized with his left hand projected through the upper part of the draw head, and into the aperture entered by the bull tongue, so that as the bull tongue of the moving car entered the draw head of the still car, the end

of it struck the projecting end of the pin, thereby pressing the upper end of the pin outward toward and against the raised upper lip at the mouth of the iron draw head, and thus caught the finger of the left hand between the pin and the lips of the draw head and held him there, as he says, "until the car came ahead, and the car bounced away." When the cars came together the draw heads receded until the deadwoods of the cars came solidly together and on the reaction, he says the draw heads of the right or still car pulled out nine or ten inches, and he was still held fast. He says then "I grabbed hold of the pin with this—the right—hand to get loose, and it held me in that position until it (suppose he means deadwoods) got very near together again and it took up the slack and I got my hand loose and pulled it out but did not get it out quick enough and got it caught between the deadwoods."

The plaintiff was then asked by his counsel these questions:

"Q. I will ask you to state to the jury what condition these couplers were in. A. The one to my left, it had a lever on, and the chain attached to this bull tongue, that was broken off.

Q. What was broken off? A. The lever.

Q. Which part of it was broken? A. That was broken on the left; this link was in there so you could work it anyway you wanted to, but the one to my right, (the bull tongue in car to his right,) was out entirely.

Q. Now state, Mr. Dixon, in making a coupling of that kind, where the coupler is out on one side and in on the other, how the coupling is made? A. You can come back and it is not necessary to catch hold of the pin (means link) at all, because it is all of one height."

The bull tongue was in left or moving car and that was used for a link.

"Q. State to the jury what condition as to repair the couplers were in, so they may understand it. A. The car to my right—the bull tongue was out entirely; the one to my left, the lever that works the bull tongue was broken,

and this draw head to my right certainly must have been out of order, for there was a great deal of lost motion there. It pulled out at least nine or ten inches; most generally it pulls out three or four inches."

It is more dangerous to make couplings of cars that have deadwoods. He says such cars, however, were in general use.

On cross-examination he is asked:

"Q. What defect was there about this coupling? A. I don't know, unless the springs were broken or the following plates out. Q. You can't testify positively as to that? A. Of course not. Q. You knew before you entered this car that the lever was gone—broken? Oh, yes; certainly. Q. You knew that coupling where the lever is gone is more dangerous than the other kind, didn't you? A. Oh, yes; more dangerous for a man to go in, of course.

He says no one directed him to make that particular coupling.

"Q. You knew it was more troublesome and dangerous to make that kind of a coupling, before you went in there, than to make an ordinary coupling? A. Why, of course; they are all dangerous. Q. The business of a brakeman is dangerous? A. I should think it was."

APPELLANT'S BRIEF, WILLIAM H. DYE, ATTORNEY, ROBERT BELL, OF COUNSEL.

The burden rested upon the plaintiff to show that there existed a defect in this coupler and its machinery, which caused the injury, and that the existence of this defect was negligence on the part of the appellant. Sack v. Dolese (Ill.), 27 N. E. Rep. 63.

Without proof that knowledge of the defect causing the injury might have been obtained by reasonable diligence, there could be no recovery. The burden was upon the plaintiff to make such proof. Provision Co. v. Hightower, 92 Ill. 139; R. R. Co. v. Pratt, 14 Ill. App. 436; R. R. Co. v. Stites, 20 Ill. App. 648; Ry. Co. v. Troesch, 68 Ill. 545; R. R. Co. v. Platt, 89 Ill. 141; Ladd v. R. R. Co., 119 Mass. 412.

C., C. & St. L. Ry. Co. v. Dixon.

Failure of employers to furnish suitable machinery furnishes no excuse for the conduct of an employe who voluntarily incurs known danger. He must use due care and caution to avoid the injury. If he has knowledge of all the perils of a particular service, he may decline to engage in it or require that it first be made safe; but if he does enter into it, he assumes the risks and bears the consequences. Pa. Co. v. Lynch, 90 Ill. 333; C. C. & I. Ry. Co. v. Troesch, 68 Ill. 552; Camp Point Mfg. Co. v. Ballou, 71 Ill. 417; Honner v. Ill. Cent., 15 Ill. 550; Ill. Cent. v. Jewell, 46 Ill. 99; Sack v. Dolese (Ill.), 27 N. E. R. 62.

That a servant can not recover of his master when his own want of care contributed to the injury, or by the exercise of ordinary care he might have avoided it, may now be regarded as a rule of law completely established. I. C. R. R. v. Patterson, 69 Ill. 650; T. W. & W. Ry. Co. v. Asbury, 84 Ill. 430; T. W. & W. Ry. v. Black, 88 Ill. 112; Austin v. C., R. I. & P. R. R., 91 Ill. 35.

Where a servant is injured, either through the carelessness or incompetency of a fellow-servant, or through any defective machinery furnished, and had the same knowledge or means of knowledge, as the master, he can not maintain an action for such injury, but will be held to have assumed such risk. Pierce on Railroads, 379 and 380; T. W. & W. Ry. v. Black, 88 Ill. 112; T. W. & W. Co. v. Asbury, 84 Ill. 430.

Appellee's Brief, Mundy & Organ, Attorneys.

It was the duty of the appellant to furnish its brakemen with suitable cars and machinery for the business in hand and to use reasonable diligence in seeing that it was in repair. C. & N. W. R. R. Co. v. Swett, Adm'r, 45 Ill. 197; Chicago & N. W. R. R. Co. v. Jackson, 55 Ill. 492; T. W. & W. Ry. Co. v. Fredericks, 71 Ill. 294; T. W. & W. Ry. Co. v. Ingraham, 77 Ill. 309; C., B. & Q. R. R. Co. v. Avery, 8 Brad. 133; C. & E. I. R. R. Co. v. Hagar, 11 Brad. 498; Ford v. Fitchburg R. R. Co., 110 Mass. 240.

The defect was, under the holdings of our courts, a patent

defect, for the reason that the appellant should have known that it existed, it only requiring reasonable diligence to look under the car and discover it; the car stood eleven days on the track at that place before the injury, during which time the appellant had ample time and opportunity to inspect it, and is charged with the duty. Chicago & N. W. R. R. Co. v. Jackson, 55 Ill. 492.

OPINION OF THE COURT, SAMPLE, J.

The appellee's counsel does not insist that the appellant was negligent in furnishing cars with deadwoods, or with Ames' couplers. Nor is such negligence based on furnishing a car with a broken lever or chain; but the counsel say: "Plaintiff claims that the looseness of the draw bars, allowing it to recede sooner, and a greater distance than it could or would, had it been in repair, allowing the bull tongue to shy the pin in an unusual and unexpected manner, caught his fingers when he was not expecting such occurrence."

The injury can not be attributed to the receding of the draw bar of either car a greater distance than usual, for the reason that there is no evidence to sustain that theory. All of the evidence shows that the draw bars were constructed so that they would recede and permit the force of the concussion of the cars, as they came together, to be sustained by the deadwoods. That is the only purpose of the deadwoods. They are intended to receive the force of the concussion, and thus relieve and preserve the draw bars from being broken. In such case, the draw bars of cars having deadwoods can not recede, or at least in this case the evidence does not show that they did recede further than was necessary for the deadwoods to receive the force of the shock of the cars as they came together.

The evidence is not that the draw heads receded too far, but that the draw head of the right or still car pulled out too far, as shown by the evidence of the plaintiff above quoted.

He testified as follows: "This draw head to my right

(meaning the draw head of the still car) certainly must have been out of order, for there was a great deal of loose motion there. It pulled out at least nine or ten inches. Most generally it pulls out three or four inches." It will be observed that he does not pretend to state how far the draw bars receded, or that either of them receded farther than usual. How the pulling out of the draw bars of the cars, or either of them, could have caused or contributed to this injury, we are unable to understand.

The pulling out of the draw head of the right car occurred on the reaction, after the cars had come together. Before that time, according to the plaintiff's testimony, his fingers had been caught as heretofore described. Even if the draw bar had receded farther than usual, we are at a loss to understand how that could have caused appellee's injury. Why should such receding cause the pin to be forced or canted over, so as to catch the appellee's hands? As a cause, the receding would naturally have the opposite effect.

The bull tongue was in the left, or moving car; the pin, of which appellee had hold, was in the hole of the draw head of the right or still car, with the lower end projecting into the aperture of that draw head. The bull tongue being fastened, was stiff—therein differing from a link—and when it struck the lower end of the pin, the canting or shying would naturally occur, and the receding of the draw head could not, as a cause, have operated to produce it.

It was incumbent on the appellee to prove, not only a defect in the coupler, but the defect that caused the injury. Merely proving that there was a defect, is not sufficient. Not only so, but under the averments of the declaration, the proof must also show that the defect causing the injury was known to the defendant, or by the exercise of reasonable care, it could have been known. There is an absence of proof as to when the defect, if it can be so called, in the spring or following plate, mentioned by the appellee, occurred, or that appellant knew, or could have known by

the exercise of reasonable diligence, of such defect, even,if it is assumed such defect was the cause of the injury.

The fourth and sixth instructions given for the appellee, are erroneous. As heretofore stated, the declaration charges negligence in "not keeping the cars and machinery thereof in good repair, but on the contrary, the couplers were out of repair, and not sufficient for the purpose used."

The fourth instruction is as follows:

"The jury are instructed that a master or employer is bound to use reasonable care, skill and judgment, to furnish suitable machinery and implements properly constructed, and ordinarily skillful and trustworthy agents and workmen, and if the employer does not use such care, skill and judgment, and injury results therefrom to an employe, the employer will be liable for such injury unless the party injured' knew of such defect long enough to have made complaint and did not make such complaint."

The cause of action is want of repair and notice of such condition. This instruction makes liability depend on the furnishing of machinery properly constructed, which was not made an issue in the case either by the pleadings or the evidence.

Notice is not necessary in case of an improper construction of machinery, but is, in case of defect by use or for want of repair.

The sixth instruction is as follows:

"The court instructs the jury in this case, that if you believe from the preponderance of the evidence that the plaintiff, while in the exercise of reasonable care himself, was injured while attempting to make a coupling, and that said injury was caused by reason of the couplers, the machinery connected therewith being out of repair, then the jury should find for the plaintiff."

This instruction also ignores the law of notice as above laid down, and makes the liability depend solely on there being a defect at the time of the injury, and such defect being the cause thereof, without reference to when the defect occurred, or that by the exercise of reasonable care it would

have been discovered by appellant before the injury. E. St. L. P. & P. Co. v. Hightower, 92 Ill. at p. 141.

It is also subject to the criticism that apparently it assumes that the machinery connected with the couplers was out of repair.

We do not deem it necessary to consider the other points made by appellant's counsel.

In view of our holding that the appellee did not make a case in the court below, entitling him to a verdict or judgment, we reverse, without remanding this cause, and make a finding of facts a part of our final order.

## FINDING OF FACTS.

That John H. Dixon—the appellee—was injured while in the employ of the appellant and in the line of duty, in attempting to make a coupling of cars that were supplied with the Ames coupler—commonly called bull tongue coupler—both couplers on the cars being at the time defective, which was known to appellee, but for which defect so known there is no claim for a recovery in this case, the recovery being based on the loose motion of one of the draw bars, which in that respect was claimed to be defective but which we find did not cause or contribute to the injury, even if defective in the respect claimed. We find there is no proof of a defect in the couplers of the cars, that caused the injury.

The clerk will enter this in the final order.