## Oliver C. White, Appellee, v. St. Louis Transfer Company, Appellant.

1. TRIAL—*when remarks of counsel will not reverse.* A remark as follows: "He (referring to the plaintiff) was unconscious; he did not know his wife or his children," *held,* not serious and not ground for reversal where not assigned as error.

2. MASTER AND SERVANT—*when notice of defects not essential.* Where the defect is in construction of the appliance and particularly where it is shown the master constructed the defective appliance, the master is chargeable with notice from the time of such defective construction.

3. MASTER AND SERVANT—*duty of inspection.* The primary duty is in the first instance upon the master; such duty, however, may be cast upon the servant by special contract, or by general or special rules or orders brought home to him, when such investigation is within his reasonable capacity.

4. INSTRUCTIONS—*predicated upon evidence.* Even though an instruction states a correct principle of law it should not be given if such principle of law finds no support in the evidence.

Action in case for personal injuries. Appeal from the City Court of East St. Louis; the Hon. W. J. N. MOYERS, Judge, presiding. Heard in this court at the March term, 1910. Affirmed. Opinion filed November 12, 1910. Rehearing stricken from files, March 28, 1911.

WISE, KEEFE & WHEELER, for appellant.

F. C. SMITH, for appellee.

MR. JUSTICE DUNCAN delivered the opinion of the court.

A judgment for $650 in this case was reversed in this court at the February term, 1908, for the reason that it was manifestly against the weight of the evidence. 147 Ill. App. 160. After the cause was remanded an additional count to the declaration was filed charging that the defendant negligently furnished to appellee, for his use, a wagon with a double-tree which was defective, cracked and unsuitable for the use to be made of it, all of which the defendant knew or might have

known and of which defect the plaintiff did not know, and did not have equal means of knowing. On a second trial the plaintiff obtained a judgment against the defendant for $1,600 and the defendant again appealed. The evidence of the plaintiff in the second trial tends to show that the double-tree had an old crack running from the king-bolt hole straight-away with the grain of the wood, and which materially weakened it and caused it to split out and break. It also tends to show that the double-tree was placed on the wagon with the rear side front, and thereby causing the whole pull of the load to go against the weak side of the double-tree. The evidence for the defendant tends to contradict both of these propositions; and the double-tree was itself put in evidence, and it has been certified here as original evidence. It seems to be a sound piece of hickory four feet and four inches long, two inches thick, five inches wide in the center, with one straight edge and the other bowing or curving toward each end until it is about two and three-fourths inches wide at each end or near each end and before reaching the clips on which the single-trees hang. The center of the king-bolt hole is two and one-quarter inches from the straight edge. A straight line passed through this hole parallel with the straight edge would a very little more than split off the bow part of the double-tree, taking a very small sliver off each end before reaching the clips. The wood is in no way bolted together but it has a strip of iron about seventeen inches long nailed at the center of the straight edge. The bow part of the double-tree worked opposite the horses as it was ironed and used, the straight edge with the iron support being in front. This double-tree was broken by simply splitting off the bow side of the wood the line of said split passing through the center of the king-bolt hole and running out before it reached one of the clips and breaking a sliver about one-half inch thick at the other clip on the bow side. We cannot satisfactorily say from the evidence whether or not the

double-tree was defective by reason of it being so ironed that the rear edge of it was worked in front; or, in other words, we cannot say from an inspection of it that the bow part should or should not be worked to the front. The evidence on this subject is in conflict. But it requires no expert to say very readily that the pull of the load was against the weak side of the double-tree, that is to say it would have been much stronger if worked with the straight side to the rear. The iron on the straight edge and the bow side then would both have added great strength to it and instead of splitting the double-tree open with the grain of the wood and breaking only a half inch thickness at one end it would have had to break across the grain the full width of the double-tree assisted still by the iron strip. In other words we think it is clearly shown by the exhibit itself that it was improperly and defectively made, that the king-bolt hole should have been against the straight side of the double-tree and between it and a proper iron placed on that edge to fit, or that the double-tree should have been worked on the wagon with the bow forward. We think anyone with good common judgment from an inspection of it will be forced to the conclusion that this double-tree is seriously defective in its construction and that it was not reasonably safe as constructed. Every bolt hole put through the center line of this double-tree weakened it, and there were six of them besides the king-bolt hole. The pull of the load was in this line running with the grain of the wood and pulling against the weak side of the wood, and all it had to do, which it did, was to split out with the grain. This feature of the case was not called to the attention of this court when the case was here before. We have searched this record carefully, and as the defendant made this double-tree and put it on the wagon, we are of the opinion that the evidence shows that the defendant is guilty of the negligence charged in the declaration; and that the plaintiff is not guilty of any

negligence contributing to his injury. The evidence simply shows that he had loaded about 5,000 pounds of Christmas goods on a wagon ordinarily carrying 8,000 or 9,000 pounds; and that when he climbed to his seat, about ten feet from the ground, and started the horses, the double-tree simply split out by reason of the defects aforesaid; and he was dragged from his seat and on to the brick pavement head foremost before he realized anything was wrong, and received a severely fractured skull from which he never will recover according to the physicians.

Considerable attention is given by appellant to what they term improper remarks of counsel for appellee in his closing argument to the jury. We have examined the same and do not regard them as very serious, the remarks objected to being, "He (referring to plaintiff) was unconscious. He did not know his wife or his children." The court sustained an objection to them at the time made; but as counsel for appellant did not regard them seriously enough to assign them as one of its grounds of error, they cannot be further considered here.

It is insisted that the plaintiff failed to show actual or constructive notice of the defective double-tree to the defendant for a sufficient time to enable it to repair same before the plaintiff's injury. Where the defect is in the construction of the appliance, and particularly where it is shown the defendant constructed the defective appliance, the defendant is chargeable with notice from the time of such defective construction. C. C. C. & St. L. Ry. Co. v. Dixon, 49 Ill. App. 292; Crown Coal Co. v. Hiles, 43 Ill. App. 310; Alexander v. Town of Mt. S., 71 Ill. 366.

The primary duty of inspection is in the first instance upon the master or employer; and, while it may be cast upon the servant by special contract, or by general or special rules or orders brought home to him, when such investigation is within his reasonable capacity, yet in this case no sufficient proof of such rules or

contracts was made. Neither was there any proof of notice of such defect or of such rules, if any, to the plaintiff; and the defendant was chargeable with notice of the defect.

We have examined the tenth instruction given for appellee, being the second one on page 37 of the abstract; and have considered the same with reference to the objections made to it by appellant. While it is true that where the plaintiff has equal means with the master of knowing the defect, it will ordinarily bar a recovery for injury because of that defect; yet, in this case, there is no basis upon which to support the claim of equal knowledge. The defendant is absolutely chargeable with notice of this defective double-tree because the defect was in the construction of it, and the defendant made it. The plaintiff had no knowledge of it at all and very little opportunity to discover the defect. He got the wagon that morning in the wagon yard of defendant, before day, and was injured about seven o'clock A. M. of that day, November 7, 1907; and never had used it or seen it before, so far as this evidence shows. Neither does it appear from the evidence that the wheel was blocked by a tie, and that the double-tree was broken by reason thereof. We think the evidence clearly shows the tie was put under the wheel to block it after the injury to the plaintiff. The witness who put it there expressly so swears.

The damages were very low for the serious injury proved. They are not complained of as excessive. We think the jury was clearly warranted in its finding in this case, and that the judgment of the lower court should be, and it is therefore, affirmed.

*Affirmed.*