## THE EUREKA COAL COMPANY

*v.*

## JAMES BRAIDWOOD *et al.*

1. EVIDENCE—*of the condition of work long after its completion.* Upon the question of the completion of a shaft in a coal mine in good condition, where it appeared that the work was finished and tendered on the 20th of November, evidence was offered to show the condition of the shaft in the month of January following, by the party for whom it was sunk, which the court refused to admit: *Held,* that the proof was properly excluded.

2. CONTRACT—*acceptance of work done.* Where a party engaged to sink a shaft for the purpose of mining coal, upon the land of another, and completed the work according to contract, he should not be prejudiced for the want of a formal acceptance by the party for whom the work was done.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

This was an action of covenant, by James Braidwood, James Roe and James Reuncie, against the Eureka Coal Company.

Messrs. BARBER & MUNN, for the appellant.

Messrs. HILL & DIBELL, for the appellees.

40—72D ILL.

Mr. JUSTICE SCOTT delivered the opinion of the Court:

This action is in covenant, on an agreement under seal. Appellees undertook to sink a shaft, for the purposes of mining coal, at a point to be selected by the company. Among other things, appellant obligated itself to furnish certain machinery, and to do it at such times as would not hinder the progress of the work, using due diligence in that regard. The shaft was to be sunk below the strata of coal, and to be left in good condition for mining. A general performance of all the undertakings, on the part of appellees, is averred. Several breaches are then assigned, the principal one being, that in sinking the shaft a steam pump became necessary to remove the water as the work progressed, and the company failing to furnish it in apt time, appellees were unnecessarily delayed, and thereby sustained great damages. The cause was submitted to a jury, who found the issues for appellees, and assessed their damages at $3990. To reverse the judgment entered on the verdict, the coal company prosecute this appeal. We see no reason for reversing the judgment for any cause of error suggested.

The evidence is flatly contradictory, and in all such cases, where the jury have been properly instructed, the verdict must stand, unless it plainly appears it was the result of passion and prejudice.

The controverted point in the case was, whether appellees had completed the shaft according to the contract, and left it in good condition for mining coal. On this question a great number of witnesses were examined on both sides, all, or nearly all, of them of large experience in this kind of work. The evidence is totally irreconcilable. It would justify a verdict either way. We can not undertake to say which set of witnesses the jury should believe. This would be to invade the province of the jury, which we have neither the right nor inclination to do.

Appellees gave notice, on the 20th of November, the shaft was completed, but appellant did not then examine it with a view of accepting or rejecting the work. One reason assigned

is, it was full of water, and the examination could not be made. As to whose fault it was the shaft was filled with water, the testimony is as conflicting as upon any other point. Appellees attribute it to the company's superintendent, in removing the suction pipe used with the steam pump. Without it they could not keep the water down. There is evidence in the record, if the jury gave credence to it, that tends to support this theory of the case.

Conceding the fact as found by the jury, that appellees really completed the shaft and left it in good condition for mining coal, they could not be prejudiced by the fact there was no formal acceptance by the company. Many witnesses of large experience, whose judgment on such a question was entitled to respect, say the shaft was a good one, and was capable of being worked; if so, it was the duty of the company to accept and pay for it.

The court excluded testimony offered, to prove the condition of the shaft in the month of January following. We see no error in this. Its condition at that time would not show what its condition was at the time appellees claim to have finished and tendered it to appellant. The company ought to have caused the examination to be made at once. There is evidence that tends to show it could have been made then, had not the suction pipe been removed. Appellees insist they had no means of keeping the water down after its removal.

Inquiry as to its condition in the month of January would have involved an extended investigation whether permitting water to stand in the shaft would not tend to injure or destroy it. The examination should have been made when appellees tendered the work to the company, or within a reasonable time thereafter, and the evidence was properly confined to its condition at that time.

We have carefully examined this entire record, and we fail to perceive any satisfactory reason for reversing the judgment. The case was fairly presented to the jury, and we can not say their conclusion is not warranted by the evidence, nor that the verdict does not do justice between the parties.

The judgment must be affirmed.          *Judgment affirmed.*