## William Gray v. M. M. Goode.

1. FRAUD—*In Procuring the Execution of a Note.*—The fraud necessary to defeat a recovery by a *bona fide* assignee of a promissory note before maturity, must relate to the execution and not to the consideration upon which the note is based.

2. SAME—*Of What it Must Consist.*—Such fraud must consist of some trick or device that induces the giving of one kind of instrument under the belief of the maker that he is giving one of a different kind.

3. NEGOTIABLE INSTRUMENTS—*Assignee Before Maturity Protected.*—The assignee of commercial paper before maturity, for value, who takes without knowledge of any defense and in good faith, will be protected against the defenses of the maker, even though he purchased under circumstances sufficient to excite suspicion in the mind of a prudent man, and was guilty of negligence in not making an inquiry.

4. COMMERCIAL PAPER—*Defenses in the Hands of Purchasers Before Maturity.*—Commercial paper has become such an important factor of exchange that its sanctity and integrity, as a medium of exchange, can not be successfully attacked in the hands of a purchaser before maturity, by anything short of bad faith, and the burden of showing this rests with the attacking party.

**Assumpsit**, on a promissory note. Error to the Circuit Court of Macoupin County; the Hon. ROBERT B. SHIRLEY, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

J. B. SEARCY, attorney for plaintiff in error.

The assignee, equally with the maker, is bound to use proper diligence; that when agents for the sale of patent rights and such matters, who are strangers, offer to sell promissory notes, a prudent man would have his suspicions aroused from that fact, and should protect himself by inquiry of the apparent maker. Sims v. Bice, 67 Ill. 88; Taylor v. Atchison, 54 Ill. 196.

KNOTTS & TERRY, attorneys for defendant in error.

It is earnestly contended, in effect, by counsel for plaintiff in error, that the law of commercial paper as enunciated in Gill v. Cubitt, 3 Barn. & Cress. 466, by Lord Tenterden, in 1824, where it was held " that circumstances which ought

to excite the suspicion of a prudent and careful man about
to receive a note or bill, rendered inquiry on his part neces-
sary, and if he failed to make such inquiry he was guilty
of negligence, which destroyed his character as a *bona fide*
holder," is the law of this State and should govern in this
case, and in support thereof Russell v. Hadduck, 3 Gilm.
233; Murray et al. v. Beckwith, 48 Ill. 391; Taylor v. Atch-
ison, 54 Ill. 196; Sims v. Bice, 67 Ill. 88, and Hodson v.
Eugene Glass Co., 156 Ill. 397, are cited.

Upon a careful investigation of these several authorities,
we think it will be found that they do not establish the
doctrine of Lord Tenterden, manifestly relied upon by coun-
sel for plaintiff in error, to be the rule of law in Illinois.

The promulgation of the Tenterden doctrine in England,
in 1824, was a striking innovation in the law of commercial
paper as it had theretofore existed, and is responsible, we
take it, for any and all uncertainties, confusion and conflict
of authorities which have since arisen upon the question.
Its duration there, however, was so short, and its express
and unqualified repudiation by Lord Denman, in 1834, in
the same tribunal, in the case of Goodman v. Harvey, 4 Ad.
& Ell. 870, wherein it is said—"I believe we are all of
opinion that gross negligence only would not be a sufficient
answer where the party has given a consideration for the
bill.   Gross negligence may be evidence of *mala fides*, but
it is not the same thing.   We have shaken off the last rem-
nant of the contrary doctrine.   Where the bill has passed to
the plaintiff, without any proof of bad faith in him, there is
no objection to his title,"—was so decisive and effective, and
so consonant with reason and the necessities of commerce,
that it has since prevailed there without question or modifi-
cation to this day, and is now the accepted doctrine in all
the leading American Jurisdictions.   Amer. & Eng. Ency.
of Law (1st Ed.), Vol. 2, 393; Goodman v. Simonds, 20 How.
343, and authorities there cited; Murray v. Lardner, 2 Wall.
U. S. 110; Magee v. Badger et al., 34 N. Y. 247; Seybel
v. National Currency Bank, 54 N. Y. 288; Chapman v.
Rose, 56 N. Y. 137; Hamilton v. Vought, 5 Vr. (N. J.)

187; Phelan v. Moss, 67 Pa. St. 59; Farrell v. Lovett, 68
Me. 326; Trustees v. Hill, 12 Iowa, 462; Fox v. Bank of
Kansas City, 30 Kans. 441; Colson v. Arnot, 57 N. Y. 253;
Bank of Sherman v. Apperson & Co., 4 Fed. Rep. 25; Frank
v. Lilienfeld, 33 Gratt. (Va.); 377 Schoen v. Houghton,
50 Cal. 528.

We have purposely omitted from the above list of author-
ities all Illinois citations in support of the Denman doc-
trine, for the reason that we believe it will better aid the
court if they are presented and considered *en masse*, sepa-
rate and apart from the other authorities.

There may be found some decisions of this court, as in
Russell v. Hadduck, 3 Gilm. 233, and other cases, where
there has been a seeming recognition of the opposite doc-
trine, as asserted in the instructions, at least to the extent
that a purchaser of negotiable paper, with knowledge of any
facts and circumstances which would excite the suspicion of
a prudent and careful man, is bound to make inquiry, and
in neglect thereof will take the paper subject to any equities
which may exist between the previous parties to it.   But
there never has been more than an incidental assumption,
without discussion, that such was the rule.   It has never
been presented before the court as a subject of question,
and as such discussed and considered, and a direct adjudica-
tion made thereon, and we find nothing in previous decisions
which should conclude us from adopting what, upon inves-
tigation, we are satisfied is correct doctrine in principle, and
the prevailing rule of law.   See Comstock v. Hannah, 76 Ill.
530; Shreeves v. Allen, 79 Ill. 553, which expressly sanc-
tions and liberally quotes therefrom; Murray v. Beckwith,
81 Ill. 43, which follows its reasoning; Matson v. Alley, 141
Ill. 284, which unqualifiedly approves and follows the three
preceding cases; see also Siegel, Cooper & Co. v. The Chicago
Trust and Savings Bank, 131 Ill. 569; Stevenson v. O'Neal
et al., 71 Ill. 314; Clarke v. Johnson, 54 Ill. 296; Sherman et
al. v. Blackman, 24 Ill. 347; Lampson et al. v. Ill. Trust &
Savings Bank, 62 Ill. App. 371; Mahon v. Gaither, 59 Ill.
App. 583; Webber et al. v. The Indiana National Bank, 49

Ill. App. 336, which is strongly in point; DeLong v. Schroeder, 45 Ill. App. 236, also strongly in point; Matson v. Alley, 41 Ill. App. 72; Smith v. Culton, 5 Ill. App. 422.

MR. PRESIDING JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This suit is based upon a promissory note executed by plaintiff in error to one W. S. Bernard and assigned to defendant in error before maturity. It was tried in the court below upon the following agreed state of facts :

"That W. S. Bernard, the original payee of the note in controversy, was a patent right vendor of a wire and slat fence, which, with the appliances for making same, were to enable the vendee to build said fence in certain specified territory for a certain consideration from the persons for whom said fence was built; that said note was given for the right to build said fence in the township of North Otter, in said county; that the defendant, after the making of said note received the appliances or machinery for making said fence, and at his own expense built about one-quarter of a mile of said fence on his own farm. Defendant then received knowledge that one Eke Chapman, of said county, had purchased the patent right for building said fence in said township from said Bernard, prior to date of said sale of same to defendant. The defendant, finding that said Chapman had the prior right of said township, ceased to build said fence, and abandoned all further rights therein in said township.

It is further agreed that the plaintiff, by his agent, H. C. Hamilton, knew that said Bernard was a vendor of patent fencing rights at the time of the purchase and assignment of said note; and that he bought said note at a discount of twenty-five per cent. soon after its execution.

That said note was assigned before it was due and that said plaintiff had no knowledge of the want or failure of the consideration of said note at the time of said assignment, and did not receive such knowledge until shortly before said note was due. That said note was made, executed and delivered by the defendant."

It was tried by the court without a jury and judgment rendered against Gray for one hundred and five dollars and costs.

It is the contention of plaintiff in error that there was fraud in the procurement of the note, want and failure of consideration, and facts within the knowledge of the defendant in error at the time he purchased it, sufficient to put him on inquiry of the maker in reference to the consideration.

There was no such fraud in procuring the execution of the note as would defeat a recovery by a *bona fide* assignee before maturity. The fraud or covin necessary to accomplish that must relate to the execution of the note and not to the consideration on which it is based. The fraud must consist of some trick or device that induces the giving of one kind of instrument under the belief of the maker that he is giving one of a different kind. Woods v. Hynes, 1 Scam. 103; Easter v. Minard, 26 Ill. 494; Latham v. Smith, 45 Ill. 25.

Whether the taking of negotiable paper for value before maturity, under circumstances sufficient to excite the suspicions of a prudent man, takes the purchaser out of the pale of "*bona fide* holder," has been a mooted question in this country and England. About seventy years ago it was the prevailing doctrine of English courts that the purchaser of negotiable paper for value before maturity was not entitled to the privileges of a "*bona fide* holder" when he took the paper under circumstances that should have excited the suspicions of a cautious man. And the Supreme Court of Illinois at an early day recognized that doctrine, as will be seen from an examination of Russell v. Hadduck, 3 Gilm. 233. It receded from it several years ago, however, and is now planted upon the furthermost limit of the opposite doctrine. It is now held as the law of this State that the assignee of commercial paper before maturity, for value, who takes without knowledge of any defense, and in good faith, will be protected against the defenses of the maker, even though he purchased under circumstances sufficient to

excite suspicion in the mind of a prudent man and was guilty of negligence in not making inquiry. Commercial paper has become such an important factor of exchange and trade that its sanctity and integrity as a medium of exchange can not be successfully attacked in the hands of a purchaser before maturity by anything short of bad faith, and the burden of showing bad faith rests with the party attacking. Comstock et al. v. Hannah, 76 Ill. 530; Shreeves v. Allen, 79 Ill. 553; Murray v. Beckwith, 81 Ill. 43; Matson et al. v. Alley, 141 Ill. 284.

Under the authorities above cited defendant in error was entitled to recover. Judgment affirmed.