## Dora Norlin et al. v. Gustav Becker.

## Gen. No. 13,592.

1. NEGOTIABLE INSTRUMENTS—*what establishes prima facie case in action upon.* A *prima facie* case for a plaintiff claiming the amount of a promissory note against its signers is made by the production of the note endorsed in blank.

2. NEGOTIABLE INSTRUMENTS—*burden of proof to show notice to assignee of defenses.* If the defense is made that the note is, by the terms of a collateral agreement, only payable out of a contingent particular fund, which has not come into existence, the burden of proof is upon the defendant to show that notice of the agreement reached the plaintiff before he paid in full for the note the sum for which he bought it.

3. NEGOTIABLE INSTRUMENTS—*when assignee not chargeable with defenses.* It is not the law that plaintiff, in order to recover, must have had no notice of any facts or circumstances which would put an ordinarily prudent man on inquiry. Not even suspicious circumstances of negligence on his part would be sufficient to impute notice to him unless they were of such a character as to indicate bad faith on his part.

Assumpsit. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1907. Affirmed. Opinion filed January 27, 1908.

G. BERNHARD ANDERSON and A. S. ROBERTSON, for appellants.

ATWOOD, PEASE & LOUCKS, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

The appellee, Gustav Becker, on November 19, 1906, recovered judgment in the Superior Court of Cook county against the appellants, Dora Norlin and Fred Norlin, for $521.68 on a promissory note produced by him as holder, and which he swore he bought for value before maturity from the payee—one H. J. Samson. The note was signed by the appellants, and promised to pay to the order of said Samson $500 three months after the date thereof (September 16, 1905), at the office of A. S. Robertson in Chicago. It was indorsed in blank by Samson.

The judgment was rendered on the verdict of a jury and after a motion for a new trial had been overruled by the court. The appellants appealed from the judgment to this court, and argued here, under assignments of error proper in form: (A) That the verdict and judgment are clearly against the weight of the evidence; (B) that erroneous instructions were given on behalf of the appellee; and (C) that the court wrongfully modified one of appellants' instructions.

The matter on which the appellants base their defense against the *prima facie* case which was made by the production in evidence by the plaintiff of the note sued on is this: Contemporaneously with the execution and delivery of the note in question by the Norlins to Samson, the following agreement was drawn and delivered by Samson to Norlin:

"CHICAGO, September 18, 1905.

This agreement made this 18th day of September, 1905, between Fred Norlin and H. J. Samson, witnesseth: that whereas the said Fred Norlin and Dora Norlin, his wife, have this day given to the said H. J. Samson their promissory note for the sum of Five Hundred Dollars due December 16, 1905, and whereas, the consideration for which said note is given is services rendered by said Samson as attorney for August

Schmalgemeier in his lifetime and in the matter of his estate, and it is understood that payment of said note is to be made only out of the proceeds of said estate or out of the proceeds of the estate of Charlotte Schmalgemeier, now therefore it is hereby agreed by and between the parties hereto, that if no funds of said estate are available when said note becomes due, the time of payment thereof shall be extended until such funds are available for the payment of said note.

H. J. Samson,
Fred Norlin."

This agreement was set up in a special plea filed by the defendants with the averments that there were as yet no funds of the estate of August Schmalgemeier or of Charlotte Schmalgemeier available for the purpose of paying said note; that in consequence said note was not due and payable, and that Gustav Becker, the plaintiff, when he acquired the said note, did so with the knowledge of the existence and terms of the agreement hereinabove set forth, and took said note subject to the terms and conditions of said agreement.

Other pleas set up the same agreement and an agreement that Samson would not transfer the note and would not ask for payment until he had used diligent means to secure the payment of the fees for which the note was given from the estate of the Schmalgemeiers, and alleged that said Samson had made no effort to get the fees from said estate and, in differing forms of words, that the plaintiff, Becker, was not a *bona fide* or innocent holder for value before maturity of the note in question.

On the trial the note was produced in evidence by the plaintiff, and after the interest as computed was sworn to, the plaintiff rested.

The agreement between Samson and Norlin was then introduced in evidence by the defendant, and Mr. Robertson, a lawyer, at whose office the note was made payable, testified that in November, 1905, in a conversation between himself and Mr. Becker in the presence

of Samson, he showed Mr. Becker the agreement. He testified also that at that time this conversation occurred between himself, Becker and Samson:

"I said, 'Mr. Becker, have you bought that note?' He said, 'I paid some money on it.' I said, 'How much?' He replied, 'Fifty Dollars.' I said to him, 'If you have bought that note and paid any money on it, you had no business to do it. The note was not Mr. Samson's to sell and he had no right to sell it. Now if you have paid any money, don't pay any more; if you do, you will do it at your own risk.' Mr. Samson interrupted and said, 'Mr. Becker has bought that note and he has paid all of it, he has paid for the note.' I think that is the language he used. Mr. Becker, upon asking further questions, refused to say anything more about it." Mr. Robertson also testified that he knew the condition of the Schmalgemeier estates, and that there were no funds of the estates available to pay the note. He admitted, however, on cross-examination that Mr. and Mrs. Norlin, the appellants, had received from said estates a certain note and trust deed for $3,500, which the testimony tended to show were valuable, but not salable on account of pending litigation concerning the title to the property covered by the trust deed.

Fred Norlin, the only other witness for the defendants (except one who was called to impeach by general reputation the veracity of Samson), swore that Mr. Samson introduced Mr. Becker to him in the fall of 1905, as a man who had bought his note, and that afterward a conversation occurred between Becker and himself in which he said to Becker: "You don't look foolish enough to pay $500 without knowing what you are going to get. I know that you have not, and that you have been to my lawyer, and he told you about this agreement and showed it to you," whereupon Mr. Becker said: "Well, I had already paid some money down that time," to which Norlin replied: "You should not pay any more."

Mr. Becker, being called in his own behalf, denied ever having said or implied that he had only paid a portion of the consideration given by him for the note before hearing of the agreement, and testified in effect that he bought and paid in full for the note without notice of the agreement or of any infirmity in Samson's title to it. Samson corroborated him in these statements.

There was submitted to the jury for their special finding the question:

"At the time this suit was brought were there funds from the estates of the Schmalgemeiers, or either of them, available to the defendants?" With their general verdict in favor of the plaintiff they returned as their answer to this question the special finding, No.

The plaintiff asked the court for a peremptory instruction in his favor, which was denied, and in this and in instructing the jury the court proceeded on the defendants' theory of the law in relation to notice to the plaintiff of a defense to the note before the payment for it by him was completed, giving to the jury at the request of the defendants the following instruction:

"The court instructs the jury that if they believe from the evidence that the collateral agreement in evidence was made at the time of the signing of the note in question, and that the plaintiff had notice of said agreement before he completed the purchase and payment for said note, then as to the amount of money unpaid at the time plaintiff received said notice, he is in the position of H. J. Samson, the original payee in said note, and cannot recover as to such money unless they also believe from the evidence that said Samson could recover if he were now the plaintiff in this case."

In so ruling we have no doubt the court was right. Dresser v. Missouri etc. Construction Co., 93 U. S. 92.

The court also ruled in effect by its instructions that the agreement introduced in evidence made the

note payable out of a special fund, so far as Samson and the defendants were concerned, and as a corrollary that if the jury should find (as by their answer to the special interrogatory they did find) that the defendants had no such fund in their hands, Samson could not have recovered from them in this suit.

These rulings in favor of the defendants were correct, and went as far as they could properly ask.   It was then for the jury to decide whether the defendants did have such a fund in their hands, and whether, if they did not, the plaintiff, Becker, had received notice of the agreement before paying in full the consideration for which he asserted he bought the note.

We see no objections to the instructions under which these questions were left to them.   As to the first, their finding was of at least doubtful correctness under the evidence, but it was in favor of defendants' contention, and cannot be complained of by them.

The answer to the second question was in the negative, and therefore disposed of the case adversely to the defendants.   The burden of proof was undoubtedly on the defendants to show that notice of the agreement reached the plaintiff before he paid in full for the note the sum for which he bought it.

In default of the defendants sustaining that burden, the plaintiff was entitled to recover its full amount. Production of the note carries with it a *prima facie* presumption that the plaintiff was a *bona fide* holder for value before maturity.   Counsel argue, in commenting on the instructions, that to entitle the plaintiff to recover, the jury must find that he had no notice of any facts or circumstances which would put an ordinarily prudent man on inquiry.   This is not the law.   Not even suspicious circumstances of negligence on his part would be sufficient to impute notice to him unless they were of such a character as to indicate bad faith on his part.  Comstock v. Hannah, 76 Ill. 530; Shreeves v. Allen, 79 Ill. 553; Merritt v. Boyden, 191 Ill. 136; Gray v. Goode, 72 Ill. App. 504.

There was nothing unreasonable under the evidence in the verdict in this cause, and the judgment based thereon is affirmed.

*Affirmed.*