The First National Bank of Taylorville, Appellee, v. Charles E. Kalb, Appellant.

Gen. No. 8, 371.

Opinion filed February 3, 1930.

Oscar J. Putting, for appellant.

Brown, Hay & Stephens, for appellee.

Mr. Justice Shurtleff delivered the opinion of the court.

This is an appeal from a judgment rendered in the circuit court of Sangamon county in favor of appellee, the First National Bank of Taylorville, and against appellant, Charles E. Kalb.

On November 8, 1926, appellee recovered judgment by confession against appellant on a judgment note, for $2,950.45 and costs. Appellant presented a petition to the court asking to have said judgment opened and praying leave to plead, and the court granted the prayer of said petition and appellant was permitted to file pleas. Various pleas were filed, *non assumpsit,* want of consideration and failure of consideration. The third plea alleged that the note and indorsement of appellant was obtained from appellant by false, fraudulent and deceitful statements and representations

made to appellant by M. J. Riedel and Frank C. Kincaid, officers of a corporation chartered as the Illinois Milling and Elevator Company, in the sale of its stock. It was charged that said Riedel and Kincaid represented to appellant that said corporation had been organized and had $200,000 of capital stock fully paid up and $200,000 worth of property on hand over and above its debits, and was doing a large and prosperous business and making and about to make large and fabulous profits; that said corporation had mills and elevators in operation at Virden and Taylorville and was doing a successful business and that said Riedel and Kincaid were both men of means and financially responsible. It was further charged that Riedel and Kincaid represented that they were not only a going concern and producing a product which the people needed, in whole wheat flour, but that representations were made that appellant was interested in the health of the people and that it was his opportunity to aid humanity and engage in a profitable investment. Appellant was a physician and it is charged that he relied upon the statements of Riedel and Kincaid in the execution of said note, and that all of said statements were false and untrue. Appellee filed replications to the last four pleas, averring a consideration for said note and that it was a holder in due course for value and had no notice.

Appellant executed his note for $2,500 on June 30, 1925, due 12 months after date with interest at 6 per cent per annum, and the note was first made payable to the order of the Illinois Milling and Elevator Company, but later was returned to appellant and he was requested to make a new note payable to his own order and indorse, which he did. At the time the note was first executed on June 22, 1925, Kincaid and Riedel gave to appellant a contract as follows:

"This is to certify that Dr. Chas. E. Kalb has this 22nd day of June, 1925, purchased of Frank C. Kin-

caid & Co. twenty-five shares of Illinois Milling & Elevator Co.'s stock for twenty-five hundred dollars, par value of said stock is one hundred dollars per share.

"It is herein agreed by the parties signing this agreement that at the expiration of twelve months should the said Dr. Kalb for any cause whatsoever wish to dispose of the above said stock, the undersigned parties agree to dispose of said stock at twenty-five hundred dollars or par value without cost to said Dr. Kalb.

"In case of death of the said Dr. Kalb the undersigned agree to carry out the above agreed contract with Dr. Kalb's heirs, executors or administrators.

"Signed at Springfield, Illinois, this 22nd day of June, 1925.

> Frank C. Kincaid & Company,
> (Signed) Frank C. Kincaid.
> Illinois Milling & Elevator Co.,
> (Signed) M. J. Riedel, Pres."

At the close of all the proofs, appellee requested and the court gave an instruction to the jury to find a verdict for appellee, and the jury so found and the original judgment was confirmed in the sum of $2,950.45 and appellant has appealed.

On the trial of the cause appellee offered in evidence the promissory note and rested its case. Appellant presented his proofs and it is contended on the part of appellee that appellant presented no proofs tending in any manner to establish the allegations set out in any of appellant's pleas and that the court was warranted in instructing the jury to find a verdict for appellee. Little assistance is afforded by counsel on either side to place before this court an abstract of testimony showing the real facts in the case. Counsel for appellant has shown with great care several verbose affidavits which had no bearing upon the case, and a considerable number of leading and incompetent

questions, "tilts" with the court and counsel over testimony, and no attempt made to sort out the competent from incompetent testimony. Counsel for appellee tried the case upon the theory that appellant must prove a vacuum, a pure negative, as to ownership of property before appellant could even proceed in the attempt to show fraud. As to some objections appellee was erroneously supported by the court, to which rulings both parties contributed. It is beyond question that the note was made out to and for the benefit of the Illinois Milling & Elevator Company and for the benefit of Riedel and Kincaid. It is further shown that they represented to appellant as matters of fact that the Illinois Milling & Elevator Company had $147,800 worth of property and that it was a $200,000 capital stock corporation, of which $147,800 was fully paid up; that as portions of this property the company had a mill and elevator at Virden, Illinois, and another mill and elevator at Taylorville, Illinois. These were representations of concrete facts and if the statements were false and appellant relied upon them, it constituted fraud. (*Dunlap v. Peirce,* 336 Ill. 178, 185.) The court erred in excluding the certificate of December 12, 1924, of the incorporators of this company, including M. J. Riedel, that said sum of $147,800 had been paid into said company. This certificate was under oath and in it the said M. J. Riedel stated that he had paid in the sum of $87,800 to this company at the time of its incorporation. Appellee insists that these certificates were admitted and cites the record as follows:

"The Court: I will admit them subject to renewal of the objection. Mr. Vogel excepts.

"The Court: All this must be connected up before it is finally admissible."

Court and counsel later evidently did not consider they were connected up. The certificates did not go to the jury.

It is said that no competent proofs were offered tending to show that the above statements or any of them were false. A witness, Webster, who was the sales manager, office manager and bookkeeper for the Milling & Elevator Company in May and June, 1925, and thereafter, testified that the company began to turn out products in the early spring of 1925 and operated only about a year. Webster states that at the time the note was signed the company did not have any property. Webster was with the company about four months. After this four months the witness states that the company bought a lot of grain and could not pay for it and was unable to meet its bills and that the farmers at Taylorville had money coming to them. Webster further testified as to the assets and property of the Milling Company that ''It proved afterwards they didn't have any. I am basing the statement upon the fact that they had no assets; well, upon the fact they didn't have any; they didn't have anything to pay any of their bills with; that was about five months after this,—along about November, 1926; they did not seem to be able to find any; they had no elevator at Virden; they had no interest in an elevator at Virden; they had no elevator at Taylorville; they operated an elevator at Taylorville afterwards (after appellant purchased stock). This was owned by the McKenzie Milling Company and they operated it for a while; the Illinois Milling & Elevator Company had no title to this mill. I examined the records. The Milling & Elevator Company never owned any notes to my knowledge. My knowledge of the financial affairs of this company goes from March 1st, 1925, until January 1st, 1926. I was sales manager of flour, office manager and bookkeeper. I kept the books of the amount of stuff that was sold and taken in and the value and amount of stock on the stock books. I kept the stock books. I took orders for flour and delivered some.''

The witness further stated that he could not state positively but that on June 30, 1925, the company may have had notes. He states positively that it had no real estate and he states that he bases his testimony that the company had no assets in June, 1925, upon what he saw and upon what he heard and upon what later "came out in court." He further testified: "I saw they had nothing; it was not on what I heard; it was on what I saw.

"Q. Where did you see it?

"A. I failed to see it; they did not have it."

The witness further testified that he based his testimony "on the fact that they never had any property; there was none to be found; they owe me money and I sued them and got a judgment in this court for over $2,000 along about January 1926—7—1927." Webster further testified that he knew about the condition of affairs prior to that time from the records. The witness testified that the office furniture of the company in the office on June 30, 1925, came from "Dirkson's" in Springfield and was never paid for. The court struck it out. The witness testified to a conversation between appellant and Kincaid about the note and stated: "Mr. Kincaid told him (appellant) that Mr. Riedel, who was president of the company, didn't want the note made out to the company but wanted it made out to—'a myself note.' He wanted to transfer the note and it couldn't be done that way with the company's name on it. Yes, that is what Mr. Riedel said; that is what he told Mr. Kincaid before he went down there." The court struck out this testimony. The witness was asked to state anything he heard in regard to the note in the presence of appellant or Riedel or Kincaid or any officer of the company. The answer was a statement of what Riedel had stated to Kincaid, a part of which Kincaid had stated to appellant. It was competent.

Appellant offered the bill, summonses, proof of service and decree in a cause brought in the circuit court of Sangamon county in the month of September, 1926, by the Attorney General of the State of Illinois in the name of the People of the State against the Illinois Milling & Elevator Company, to dissolve the corporation for failure to make any report and for failure to pay any corporation or franchise tax or license fees. The corporation had listed its business office in the City of Springfield in the county of Sangamon. No such office could be found. Service was had by publication. This company made no report of having done any business in 1925; it made or paid no license or franchise tax for the year 1925 and by the decree of the court in November, 1926, the corporation was dissolved and vanished into ''thin air.'' The court, upon objection by appellee, refused to admit any of these records in evidence. It was argued that it was too remote and counsel cite: *Eureka Coal Co. v. Braidwood,* 72 Ill. 625 and *David Bros. v. Vandalia R. Co.,* 168 Ill. App. 621. The cases cited have no application to the facts in this case. The proofs offered were highly corroborative, if not conclusive, as to the truth of the testimony of the witness Webster and should have been admitted. Taking the proofs altogether appellee having offered no proofs except the note, the least that can be said is that appellant's proofs made a prima facie case of fraud in the transaction that shifted the burden of proof to appellee to show that he was a holder of the note in due course, for value, and had no notice of the facts proven. Appellant contends that the burden of proof does not shift to the holder of the note unless it is shown that there was fraud in the execution of the note, citing such cases as *Gray v. Goode,* 72 Ill. App. 504; *Wells v. Manufacturers & Merchants Life Ass'n,* 213 Ill. App. 549, and *Morey v. Simpson,* 197 Ill. App. 55. These cases do not hold

to that rule, and such is not the law. The question of fraud in the execution of the note has not been argued in this case and doubtless could not be, unless it should be proven that Kincaid and Riedel were not financially responsible to carry out the contract and guaranty that they gave to appellant on June 22, 1925, and never had any intention of carrying out. Section 59 of the Negotiable Instruments Act, Cahill's St. ch. 98, ¶ 79, provides:

"Every holder is deemed *prima facie* to be a holder in due course; but when it is shown that the title of any person who has negotiated the instrument was defective, the burden is on the holder to prove that he or some person under whom he claims acquired the title as a holder in due course."

Section 55 of the act, Cahill's St. ch. 98, ¶ 75, provides when a title is defective:

"The title of a person who negotiates an instrument is defective within the meaning of this Act when he obtained the instrument, or any signature thereto, by fraud, duress, or force and fear, or other unlawful means, or for an illegal consideration or when he negotiates it in breach of faith, or under such circumstances as amount to a fraud."

Did Riedel and Kincaid obtain the instrument in question upon the proofs submitted by fraud? Regardless of what the court has heretofore or shall hereafter hold to be the fraud contemplated in section 55 of the Negotiable Instruments Act, under the testimony in this case the burden of proof would shift to appellee to establish that it obtained the note in good faith for value, without notice of fraud. It was held in *Bell v. McDonald*, 308 Ill. 329, 335: "Section 52 defines a holder in due course as one who has taken the instrument under the condition, among others, that he took it in good faith and for value and with no notice of any infirmity in the instrument or

defect in the title of the person negotiating it. In the absence of any statute, a well known rule of commercial law is that the holder of a promissory note obtained from the maker by fraud has the burden of showing that he obtained it in good faith for value without notice of the fraud. (*Wright v. Brosseau,* 73 Ill. 381; *Charles v. Remick,* 156 id. 327; *Hodson v. Eugene Glass Co.,* 156 id. 397; *Merchants' Loan and Trust Co. v. Welter,* 205 id. 647; *Hide and Leather Bank v. Alexander,* 184 id. 416.) The title of the payee was not defective because of anything occurring in connection with the obtaining of the note. The pleas did not aver any fraud, duress, force, fear or other unlawful means by which the instrument was obtained. They merely averred the breach by the payee of its agreement to put in agents to sell the powder and of its warranty that the powder would cure hog cholera and keep hogs from having it; that the notes were signed and delivered only as collateral security for whatever powder should be sold and were to be held by the payee, whose representative would come at the end of five months, collect for the powder sold and surrender the first note, and would come again at the end of six months and surrender the second note, wherefore the notes were given without any good or valuable consideration and the consideration wholly failed."

In *Wright v. Brosseau, supra,* one partner issued a note in fraud of the firm and it was held that the burden of proof was thrown upon the holder to show good faith and that he was a holder in due course. *Charles v. Remick, supra,* is a similar case and in *Merchants' Loan and Trust Co. v. Welter, supra,* the note was fraudulently put in circulation. We have no doubt but that a note obtained upon representations which are false, untrue and material and upon which the maker relied, and so put in circulation by the illegal custodian, comes directly under the provisions of section 10 of

170

the Act of 1874, Cahill's St. ch. 98, ¶ 11, which described "an instrument obtained by fraud," and if there be "any fraud or circumvention used in obtaining the making or executing of any such instrument," the instrument is void.

Appellee contends that it will be as well to affirm the judgment now and save the appellee the trouble of putting in its proof to establish that appellee is a holder in due course. On this question we much prefer that the cause be submitted to a jury and that some of the errors occurring on the former trial be avoided.

For the reasons stated, the verdict and judgment of the circuit court of Sangamon county is reversed and the cause remanded.

*Reversed and remanded.*