(No. 21627.—)

NATHAN ROTCHE, Defendant in Error, *vs.* THE BUICK MOTOR COMPANY, Plaintiff in Error.

*Opinion filed December 17, 1934.*

Howe, Rademacher, Kreamer & Stalling, A. D. Weaver, and Kremer, Branand & Hayes, (Thomas Francis Howe, Henry S. Rademacher, and Edward B. Hayes, of counsel,) for plaintiff in error.

Alfred Roy Hulbert, for defendant in error.

Per Curiam: Nathan Rotche brought an action of trespass on the case in the superior court of Cook county against the Buick Motor Company and the Cicero Buick Sales Company, both corporations, to recover damages for personal injuries. The jury found the defendants guilty and assessed the plaintiff's damages at $20,000. After the return of the verdict, the sales company paid the plaintiff $2500, and obtained from him, to the extent it was concerned, a dismissal of the suit and a covenant not to sue. Motions by the Buick Motor Company for a new trial and in arrest of judgment were denied and judgment was rendered against that company for $17,500. Upon appeal, the Appellate Court for the First District affirmed the judgment. The Buick Motor Company applied to this court for a writ of *certiorari*, the writ was issued and the record of the cause is submitted for a further review.

On August 13, 1929, Nathan Rotche, forty years of age, employed as a train guard on an elevated railway in the city of Chicago, bought a five-passenger Buick automobile from the Cicero Sales Company. Twenty-six days later, on September 8, 1929, accompanied by his son, he drove the automobile to Libertyville, a village about twenty-five miles northwest of Chicago. Returning home in the afternoon, he traveled a portion of the distance over a high-

way known as Rand road. At a point about a mile north-west of the village of Des Plaines, the automobile, while running at a speed of thirty miles an hour, left the road-way, struck and damaged a concrete culvert, crossed a ditch adjoining the roadway and came to a stop in a ploughed field at a point about twenty feet beyond the ditch. At rest, the automobile lay on its right side with the front of the car to the northwest. The right front tire and left front wheel were destroyed; the rear axle was bent, the top and sides of the body were damaged and a clevis con-necting a cable with the left front wheel-brake was missing. The automobile was first towed to a garage in the village of Des Plaines. About two weeks later the car was re-moved to another garage in Chicago. Rotche, the defend-ant in error, suffered injuries necessitating an operation upon his left leg and foot. As a result the leg is shortened and the foot turned outward.

At the point where the accident occurred, the roadway is eighteen feet wide and built of asphalt. Abutting each of the two sides of the pavement is an earth filling about four feet wide. The surface of the pavement slopes from the center to the sides and the surface is somewhat uneven. A ditch about four feet deep adjoins the roadway. A con-crete culvert runs through the roadway and when the auto-mobile of the defendant in error struck it, a portion at the right end was broken off.

The defendant in error testified that immediately be-fore the accident, he was driving about two hundred feet behind another automobile whose rear stop signal suddenly flashed; that he immediately applied the foot-brake of his car and while its speed was thereby reduced, the car turned to the right, struck the culvert and plunged through a ditch which he thought was about twelve feet deep; that he had no further recollection of the accident except that later a person inquired where he wished to be taken; that pre-viously he had experienced no trouble with the brakes on

his automobile, although he had driven the car six hundred miles, and when running at a speed of twenty-five miles an hour, he could, after applying the brakes, stop the car within a distance of six or eight feet. The defendant in error admitted that in entering and leaving his garage, he had damaged the fenders and hub-caps on the right side of his car.

An attorney at law, related to the defendant in error by marriage, examined the wrecked automobile in the field shortly after the accident. He found the motor cracked, the right front tire exploded, the right rear wheel broken, and a cable and other machinery loose. He testified that his primary concern was not the automobile, but the condition of the defendant in error, and to ascertain the extent of the latter's injuries, the witness visited him at a hospital the same afternoon.

The garage owner who towed the automobile to Des Plaines made no particular examination of it at the time. Three or four weeks later, pursuant to a request made in behalf of the defendant in error, he examined the automobile in the garage in Chicago to which it had been removed. He then found that a clevis and two cotter pins were missing. Certain cotter pins on the left equalizer apparently had not been spread and could readily be removed.

The proprietor of the garage in Chicago made an examination of the car in Des Plaines on September 21, 1929, and found a loose cable. After the car had been taken to his garage, the left front wheel was removed. A clevis was missing. The cotter pins on the right side of the brake mechanism were properly clinched, while the free ends of some on the opposite side were not separated. Nothing in the mechanism underneath the left front fender was broken.

A witness, formerly employed in the repair and sales departments of automobile companies, testified, over objection, that he examined the automobile in the garage in Chicago. He thought he made the examination in Decem-

ber, 1929. He observed that the cable leading to the arm extending from the left front shoe-brake was hanging down and that certain cotter pins were missing. The foregoing is the substance of the evidence introduced by the defendant in error.

On behalf of the plaintiff in error, a deputy sheriff of Cook county testified that he went to the place of the accident shortly after it occurred. He found evidence of tire marks on the right earth abutment for a distance of twenty feet. These marks apparently resulted from the application of the brakes to the wheels of an automobile. The wrecked car bore evidence of its impact with the concrete culvert.

Evidence was introduced showing the inspections to which Buick automobiles are subjected during the course of their construction. With respect to the brakes on these cars, two men at or near the end of a conveyor inspect all the parts as well as the adjustments. The brake inspectors examine every cotter key or pin to ascertain whether it is properly clinched to hold in place the clevis through which it extends. When any part of an automobile is found missing or defective, the car is tagged and excluded from the conveyor. No record is kept of the automobiles inspected except those found defective and therefore rejected. There was no record that the automobile in question was rejected for any defect in the construction or adjustment of the brakes or for any other defect.

The Buick Motor Company ships its automobiles to be sold to dealers in and about Chicago to its plant in the southwest part of that city. Two employees at this plant inspect the brakes of all automobiles received from the factory at Flint, Michigan. They examine the pins and cotter keys in the brake connections and inspect the steering mechanism. Any defect found is reported to the superintendent. After inspection each automobile is tagged and kept for two weeks. The automobile concerning which the

present controversy arises was sold and delivered to the Cicero Buick Sales Company on August 5, 1929.

The sales company also maintains a system of inspection. After a new automobile is sold, it is prepared for delivery to the purchaser and this process requires four and one-half or five hours. The inspection includes, among other things, the removal of the wheels, the greasing of the bearings, the oiling of brake connections and the testing of the brakes by driving the car at a speed of thirty-five miles an hour. A mechanic employed by the sales company who inspected the car in question testified that the brake rods, cables, clevises and cotter pins were in place and correctly adjusted and that the brakes were in perfect condition. The card which he filled out upon the completion of his inspection was introduced in evidence and showed that he had checked various items among which were the adjustments of the clutch, the pedals and the brakes. He had an independent recollection of his inspection of the particular car because he permitted it to leave the possession of the sales company without a sufficient supply of gasoline.

Another employee of the sales company also inspected the car. He testified that he found all the cotter pins in place and properly spread or clinched; that the brakes were in the same condition when the car was sold to the defendant in error as when it was received from the manufacturer; that the cotter pin which witnesses called by the defendant in error testified was missing, he actually saw in its proper place; that it held the clevis and that the ends of the cotter pin were spread or separated.

A motion to direct a verdict for the defendant was made at the close of the plaintiff's evidence and again at the close of all the evidence. Both motions were denied. The contentions of the plaintiff in error are that, even if, at the time the defendant in error bought the automobile from the sales company, it was defective in the respect claimed by him, the defect charged was a patent one and

would not subject the manufacturer of the automobile to liability to a third person for injuries suffered as the result of the defect; that in any event, no competent evidence was adduced by the defendant in error to prove that the automobile was defective at the time it was delivered to the dealer or later when the accident occurred, and that, for either of the foregoing reasons, the motion to direct a verdict should have been granted.

The defendant in error seeks to trace the accident which gave rise to this case to an unspread cotter pin in the brake mechanism of his automobile. The plaintiff in error insists that such a defect or omission, if assumed, is a patent one, open and visible to every person and readily adjusted or corrected, and cannot, in the event personal injury or property damage ensues, charge the manufacturer with liability therefor. It is a general rule that manufacturers are not liable in damages to persons with whom they have no contractual relations for personal injuries sustained by such persons because of the negligent manufacture of the former's product. The reason assigned is that an injury to any person other than the owner for whom the article was built and to whom it was delivered cannot ordinarily be foreseen or reasonably anticipated as the probable result of negligence in its construction. To this an exception has long been recognized with reference to products which are inherently and normally dangerous, such as poisons, contaminated foods, weapons, explosives, and the like—products which are normally destructive in their nature. Whether this doctrine applies to motor vehicles is a question on which there is a conflict of decisions. Some cases hold that, since an automobile is not a dangerous instrumentality *per se,* a manufacturer owes no duty to third persons, irrespective of contractual relations, to use reasonable care in its manufacture and, consequently, is not liable to such persons for injuries caused by negligence in construction. On the other hand, courts have declared in later cases that a manufac-

turer who places in trade and commerce a manufactured article, such as an automobile, which is not inherently dangerous to life or limb, but which may become so, because of its negligent construction, is liable to one who sustains injury by reason of such negligent construction. 9-10 Huddy's Ency. of Automobile Law, sec. 210; *Olds Motor Works* v. *Shaffer,* 145 Ky. 616; *Krahn* v. *Owens Co.* 125 Minn. 33; *MacPherson* v. *Buick Motor Co.* 217 N. Y. 382; *Johnson* v. *Cadillac Motor Car Co.* 261 Fed. 878.

The case of *MacPherson* v. *Buick Motor Co. supra,* is one of the leading authorities upon this subject. The defendant sold an automobile manufactured by it to a retail dealer who in turn re-sold it to the plaintiff. While the plaintiff was riding in the car, one of the wheels, made of defective wood, crumbled into fragments and the plaintiff was thrown out and injured. In its opinion holding the defendant liable, the court said: "If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully." The nature of an automobile gives warning of probable danger if its construction is defective; and hence, under the rule established by the later cases, the manufacturer of automobiles is liable to a purchaser from a dealer in its cars for its failure to exercise ordinary care in inspecting the wheels, brakes or other parts of the car so purchased, the negligence of the manufacturer causing injury to the purchaser. (3 Blashfield's Cyc. of Automobile Law, p. 2398.) The manufacturer will be deemed to have had notice of a defect if the evidence shows that, upon proper inspection, the defect was so evident that it could not have escaped attention. *Olds Motor Works* v.

*Shaffer,* 145 Ky. 616; 3 Blashfield's Cyc. of Automobile Law, p. 2399.

It appears from the evidence that cotter pins are made of narrow strips of half-round soft metal, the flat sides of which are bent together to form a full round two piece metal body with a loop at one end. A clevis is a metal device which serves as a connecting medium between the equalizer and the brake. The ends of the clevis are perforated to receive a cotter pin and the free ends of this pin are spread or clinched to prevent the clevis from slipping out of place. A cotter pin in the brake mechanism of an automobile is placed where, except by an inspection underneath the car, it is not observed. Ordinary care in the building of an automobile requires that the free ends of a cotter pin used to hold a clevis in place be clinched or separated. It follows that a manufacturer will be liable to a purchaser from a dealer where the competent evidence shows that a cotter pin was not spread when the automobile left the factory and, in consequence, the pin fell from a clevis, the clevis worked out of place, and a cable was released so that, upon the application of sufficient pressure, the brake failed to operate and an accident and injuries to the purchaser resulted.

The plaintiff in error contends, however, that even if the cause of action alleged is maintainable, the defendant in error introduced no evidence to prove one of its essential elements, namely, that the automobile was negligently constructed, and, consequently, the motion to direct a verdict for the plaintiff in error should have been granted. In this case the Appellate Court has affirmed a judgment for the plaintiff rendered in an action at law. This court, in such a situation, is precluded from weighing the evidence to determine where the preponderance lies. Where, however, a motion was made in the trial court to direct a verdict for the defendant, as was done in this case, the evidence may be examined to determine whether, when it is con-

sidered in its aspect most favorable to the plaintiff, with all the inferences reasonably deducible, there is a total failure to prove an element necessary to maintain the cause of action alleged. This process requires consideration of the evidence itself and not merely of the statements concerning the facts proved set forth in the opinion of the Appellate Court. *Coal Creek Drainage District* v. *Sanitary District,* 336 Ill. 11; *Bloom* v. *Vehon Co.* 341 id. 200; *Nelson* v. *Stutz Chicago Factory Branch,* 341 id. 387.

The mere fact that an accident resulting in an injury to a person or in damage to property has occurred does not authorize a presumption or inference that the defendant was negligent. The burden was upon the defendant in error to prove by competent evidence, direct or circumstantial, that the plaintiff in error was guilty of negligence in the manufacture or assemblage of the automobile in question. (*Bowman* v. *Woodway Stores,* 345 Ill. 110.) Testimony concerning the condition of cotter pins in the brake mechanism several weeks after the accident occurred without proof that the condition of the pins remained unchanged was inadmissible and should have been excluded. Such testimony was not responsive to the allegations of the declaration and could not subject the plaintiff in error to liability. 8 Thompson on Negligence, (White's Supplement,) 1914, sec. 7870; *Eureka Coal Co.* v. *Braidwood,* 72 Ill. 625; *Davis* v. *Alexander City,* 137 Ala. 206; *Pennsylvania Co.* v. *Marion,* 104 Ind. 239; *Powers* v. *Boston and Maine Railroad,* 175 Mass. 466; *Navigazione Alta Italia* v. *Vale,* 221 Fed. 413.

Two witnesses called by the defendant in error stated generally that the automobile was in the same condition when they examined it in Chicago as when they saw it in the field immediately after the accident. In the field they saw the cable detached, but neither testified that he saw an unspread cotter pin or that such a pin was missing. No other witness saw the automobile immediately after the

accident. The garages in Des Plaines and Chicago to which the wrecked automobile was successively removed were public and accessible to any person who might wish to enter them. The car was not kept in either garage under the observation or protection of any person. Ample opportunity was afforded after the accident and before any witness took particular notice of the car to tamper with the cotter pins. These pins were made of soft metal and without exerting effort or skill could be removed or straightened in a few moments. Without a proper foundation being laid for the evidence, the condition in which the car was found several weeks after the accident had no tendency to show how the parts had been assembled at the factory. Such proof even failed to establish the condition of the car when the accident occurred.

The defendant in error had driven the car about six hundred miles; he testified that, prior to the accident, the brakes had given him no trouble and that, by their application, he could stop the car, when running at a speed of twenty-five miles an hour, within six or eight feet. The tire marks on the earth embankment made just before the automobile struck the concrete culvert showed that the brakes had been applied and apparently operated effectively. The uncontradicted evidence shows that the automobile was subjected to several inspections before it was delivered to the defendant in error. At the factory two men stationed at a conveyor inspected the parts and adjustments of the car. They examined every cotter pin to determine whether it was properly clinched. No car with a part missing or defective in any respect passed this inspection. At the manufacturer's plant in Chicago, two employees inspected the brakes, the cotter keys in the brake connections and the steering mechanism of all cars. The sales company caused further inspections to be made. One of its mechanics inspected the particular car and found the brake rods, cables, clevises and cotter pins in place and cor-

rectly adjusted. Another employee of the same company found every cotter pin in place and clinched.

Whether there was negligence in the assembly of the parts of the automobile owned by the defendant in error, as a result of which the accident occurred, depends almost wholly upon the condition of the cotter pins previous to the sale of the car. With the incompetent testimony excluded, the competent evidence is not sufficiently definite to justify the conclusion that the automobile remained in the same condition from the time of the accident until it was examined by persons who testified that some of the cotter pins were unspread two weeks or more after the accident occurred.

The judgments of the Appellate and superior courts are reversed and the cause is remanded to the superior court. *Reversed and remanded.*