(No. 35229.—

LINDA WATTS *et al.*, Appellants, *vs.* BACON & VAN BUSKIRK GLASS CO. *et al.*, Appellees.

*Opinion filed November 18, 1959—Rehearing denied Jan. 18, 1960.*

JOHN ALAN APPLEMAN, of Urbana, for appellants.

RENO & O'BYRNE, of Champaign, for appellee.

Mr. JUSTICE DAVIS delivered the opinion of the court:

This case involves the liability of a supplier and installer of plate glass in the door of a drug store. Plaintiffs brought suit for injuries sustained by Linda Watts, a minor, who was struck by particles of flying glass from the door. They joined as defendants, the tenant and operator of the drug store, Harry J. Baker, Jr.; the owners of the building, Mae Greenman and Shirley Sostrin; and the supplier and installer of the plate glass, Bacon & Van Buskirk Glass Co., Inc., herein called the glass company.

At the close of plaintiffs' evidence, the trial court directed verdicts of not guilty for the owners of the store and the glass company, and the jury found Harry J. Baker, Jr., not guilty. Plaintiffs appealed only from the action of

the trial court in directing such verdicts. The Appellate Court reversed and remanded as to the owners of the building, but affirmed as to the glass company. (20 Ill. App. 2d 164.) We granted leave to appeal from that affirmance. The sole question presented upon this appeal is whether the trial court erred in directing a verdict of not guilty in favor of the defendant glass company.

On the evening of October 30, 1955, plaintiff William C. Watts, accompanied by his two minor daughters, contemplated purchasing certain articles at the drug store operated by the defendant Harry J. Baker, Jr. During the day, it had rained, snowed and sleeted and at the time of the occurrence, the temperature was near freezing. Watts held the left hand of his daughter Betty with his right hand and the right hand of plaintiff Linda with his left. Entrance to the drug store was gained through a doorway in which a plate glass door was mounted in a metal frame. The door opened toward the sidewalk. As they reached the door, Watts released the hands of both girls and reached out to open the door. As he touched the door handle or while in the act of reaching for it there was an occurrence characterized by him as an explosion whereby the lower two thirds of the plate glass in the door broke into jagged pieces of various sizes. Certain of these pieces struck the plaintiff Linda causing the injuries complained of.

Defendants Mae Greenman and Shirley Sostrin owned the building in which the drug store was located and Hyman Greenman, the husband of Mae and father of Shirley, looked after the property and collected the rent. Sundry drug items were sold in the store and food was served at the counter on its west side. It also housed a postal substation. Hundreds of customers entered the store daily and, in the opening and closing of this entrance door, persons, packages and other articles came in contact with the glass.

Defendants Mae Greenman and Shirley Sostrin remodeled the store front in January, 1955, at which time

the glass door was installed. An architect designed the store front, and in the original plans specified the use of tempered glass in the door. At this time, Hyman Greenman went to the glass company and talked with its president about the different types of glass that could be used in connection with the installation of the door. The testimony establishes that it was possible that the difference between plate and tempered glass was explained to Greenman; that the difference in price was discussed; and that Greenman was told that plate glass was cheaper.

Greenman wanted an inexpensive door and ordinary plate glass of $\frac{1}{4}$ inch thickness was used with his approval and agreement. In April or May, 1955, the original plate glass in the door was broken by a burglar who ran into it in an attempt to escape the police, and it was replaced with the same type plate glass.

Plaintiffs called a ceramic engineer who testified that tempered glass is five times stronger than plate glass, is more difficult to scratch and can withstand a blow by a hammer without breaking; and that when tempered glass breaks, the pieces have rounded edges rather than sharp and jagged edges of the type produced by plate glass in the process of breaking. Plaintiffs' expert neither examined the glass or the installation involved, nor testified as to the strength or suitability of the plate glass for the use to which it was put.

Plaintiffs charge the defendant glass company with negligence in the installation of the plate glass; in failing to use tempered glass or laminated safety glass; in utilizing a door with a single "push-pull" handle; in using plate glass of insufficient strength; and in failing to subject the glass to polariscopic examination. In their post-trial motion and subsequent appeals, they rely upon the alleged negligence of the glass company in using plate rather than tempered glass.

Upon motion for a directed verdict for defendant, it

is. the duty of the trial court to determine whether there was any evidence, together with all reasonable inferences therefrom, tending to support the material allegations of the complaint. In the absence of such evidence, the trial court should grant the motion. (*Peters* v. *Catt,* 15 Ill.2d 255; *Butler* v. *O'Brien,* 8 Ill.2d 203; *Shevlin* v. *Jackson,* 5 Ill.2d 43; *Rotche* v. *Buick Motor Co.* 358 Ill. 507.) The issue thus presented is whether plaintiffs have adduced any evidence fairly tending to establish the negligence of the defendant glass company.

In finding the trial court in error in directing a verdict for the owners, the Appellate Court stated at page 172:

"They knew of the use to be made of the leased premises and the nature and character of the traffic in and out. It is a reasonable inference from the testimony that they know that the architect had specified tempered glass for the door and not plate glass. The intendment most favorable to the plaintiffs is that the difference between the two types of glass was explained to the owners' agent. Coupled with the fact that the door had broken on a prior occasion, it is a reasonable inference that they knew or were chargeable with knowledge that the type of glass used was not suitable for the intended use." (20 Ill.2d 164, 172.)

We recognize that section 92(3)(b) of the Civil Practice Act (Ill. Rev. Stat. 1957, chap. 110, par. 92(3)(b),) provides that this court shall re-examine such cases brought to it from the Appellate Court as to questions of law only. However, where a motion is made in the trial court for a directed verdict, as was done in this case, the evidence may be examined to determine whether, when it is considered in its aspects most favorable to the plaintiffs, with all the inferences reasonably deducible, there is a total failure to prove an element necessary to maintain a cause of action. This process requires consideration of the evidence itself and not merely the statements concerning the facts as set forth in the opinion of the Appellate Court.

*Robinson, Admx.* v. *Workman,* 9 Ill.2d 420; *Rotche* v. *Buick Motor Co.* 358 Ill. 507.

We have carefully searched the record but fail to find any evidence of the glass company's negligence in the installation of the glass door, or of any defect in the plate glass. As we understand the plaintiffs' contentions, the real question is whether the glass company negligently breached a duty to them by supplying and installing plate glass rather than a stronger type of glass in the drug store door. It is undisputed that tempered glass is five times stronger than plate glass, and is less dangerous when shattered; that there was considerable traffic through the drug store; and that plate glass was chosen after a discussion between defendant glass company and the agent of the owners of the store building. However, there is no evidence that a plate glass installation was not customary, or that it was inherently dangerous. On the contrary, it appears from the record that such plate glass installation was customary and usual while the use of tempered glass was exceptional. There is no evidence concerning the actual strength of plate glass, or of its unsuitability for the purpose used.

In short, the evidence viewed most favorably to the plaintiffs reveals that an architect, hired by the glass company, designed the store front specifying the use of tempered glass in the door; that plate glass is customarily used, but tempered glass is stronger and more expensive; that the glass company did not adequately explain the difference in strength to the purchaser; that the purchaser chose the plate glass; and that the glass "exploded" injuring the plaintiff, Linda Watts. It was conceded that the doctrine of *res ipsa loquitor* was inapplicable to this case, and we must therefore determine whether the foregoing evidence is sufficient to establish a *prima facie* case against the defendant glass company.

A supplier of chattels is not ordinarily liable to third parties unless the article is inherently dangerous. The plate

glass in question was not inherently dangerous. However, such supplier may be liable to a person injured by an article which, while not dangerous when properly made, becomes dangerous when defectively made. (*Lindroth* v. *Walgreen Co.* 407 Ill. 121; *Rotche* v. *Buick Motor Co.* 358 Ill. 507; *Beadles* v. *Servel Inc.* 344 Ill. App. 133.) To establish liability on this ground, however, there must be some evidence that the defendant either should have known of or negligently caused the defect in question. It is not in itself negligence to supply a certain type of material which is reasonably safe and customarily used, though other materials might conceivably be safer. *Day* v. *Barber-Colman Co.* 10 Ill. App. 2d 494, 508.

We are of the opinion that there was no evidentiary basis to sustain a jury verdict that the glass company was negligent in supplying or installing plate rather than tempered glass. It is true that tempered glass would be safer, and presumably doors of stronger materials would be still safer, but a supplier of chattels should not be compelled to sell only the ultimate in materials. In the case at bar, the defendant supplied and installed the plate glass chosen by its customer. There is no evidence that this glass was inherently dangerous; that it was negligently installed; that it was defective; or that it was not reasonably safe or not customarily used.

The mere fact that plaintiff Linda Watts was injured does not authorize a presumption or inference that the defendant glass company was negligent. The burden was upon plaintiffs to prove by competent evidence that the glass company was negligent in supplying or installing plate rather than tempered glass. They have not sustained this burden. *Rotche* v. *Buick Motor Co.* 358 Ill. 507.

We therefore conclude that the trial court was correct in directing a verdict of not guilty in favor of the glass company. The judgment of the Appellate Court is accordingly affirmed.

*Judgment affirmed.*