Eleanor Traylor, Plaintiff-Appellee, v. The Fair, a Corporation, and Warren A. Miller, Inc., a Corporation, Defendants-Appellants.

Gen. No. 51,995.

First District.

October 7, 1968.

Rehearing denied November 26, 1968.

Valukas & Depke, and Andrew J. Farrell, of Chicago, for appellants.

Harry S. Posner and Jack Z. Cole, of Chicago (Fred S. Posner, of counsel), for appellee.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

The defendants, The Fair, a corporation, and Warren A. Miller, Inc., a corporation, appeal from the jury verdict and judgment entered in the First Municipal District of the Circuit Court of Cook County for the plaintiff, Eleanor Traylor, in the amount of Six Thousand Dollars ($6,000), and against both defendants, seeking judgment n. o. v. or, in the alternative, a new trial.

Plaintiff's complaint charged the defendants "undertook to wave and set the hair of the plaintiff but did so in a careless and negligent manner." No specific charge of negligence was pleaded. The defendants denied the material allegations of the complaint.

Plaintiff, age 42, a medical secretary, on April 11, 1959, went to the defendant's store for a permanent. She had been patronizing the establishment for a year. An operator identified by the plaintiff as "Gerry," who had never worked on her hair before or since, washed the hair and combed it out. Then the hair was rolled and a "solution" was applied which remained on the hair for about half an hour during which time the operator was not present. On past occasions, the plaintiff testified the "solution" remained on for ten or fifteen minutes. She noticed a "burning" as the solution was being applied, called the operator's attention to it, and a "salve" was put on her forehead and hairline. While the solution was on the hair, the plaintiff noticed a "tingling, burning sensation." The rest of the procedure was uneventful.

That night the plaintiff noticed a seepage from her scalp into her eyes and onto her pillow. Two days following the occurrence she was seen by Dr. Albert G. Weiss, one of her employers. During the course of treatment,

she noticed that her hair was falling out, and her hair remains thin to the present time. She testified to her prior excellent health and denied any prior history of hair or scalp disease. She also saw Dr. Zakon, a dermatologist, who did not testify at trial.

Dr. Weiss, although not a dermatologist, did testify. He said that when he first saw the plaintiff, she related a history of a permanent two days before and he "treated her for chemical burn." Treatment continued through September of 1959, at which time he expressed the opinion that the condition of reddened and tender skin was permanent. He was not asked a direct question as to causal relationship between the application of the solution and the condition of ill-being.

On cross-examination, the doctor admitted he did not take any patch tests to determine sensitivity because he did not know what the solution was that had been used and could not tell whether it was capable of burning without knowing what it was. He testified, without objection, that other patients had told him of permanent waves causing burns. Additionally, the following appears in the record:

Mr. Skryd: Q. "Your diagnosis seems to be based on what the patient tells you. It could be an allergic reaction, as far as you know, if you don't know the chemical makeup of the product?"

. . . .

A. "When the patient relates that while a cold permanent solution was being applied to her she noticed, at that time, a burning in her scalp—to me this is sufficient information to conclude that the solution created a chemical burn of scalp."

272

Leonard Weber, M.D., a dermatologist, testified for the defendants. He examined the plaintiff and found evidence of seborrheic dermatitis, but no evidence of burn. He said permanent wave solution could not cause seborrheic dermatitis, that he was generally familiar with permanent wave solutions and that they contained no irritants. On cross-examination, however, he admitted that such solution could cause some transient redness of the skin in some patients. He could not testify as to the particular solution applied to the plaintiff's hair and scalp.

Defendants offered no testimony as to the facts of the occurrence, but did offer an investigator who testified as to his efforts to locate the former employee.

The defendants urge three principal points in their appeal: First, the court erred in failing to direct a verdict because of the total failure of the plaintiff to prove actionable negligence. Second, the court improperly permitted the plaintiff to apply the doctrine of res ipsa loquitur and instructed the jury thereon. And thirdly the verdict of the jury was against the manifest weight of the evidence.

■ As to the first point, they argue that plaintiff's proof was fatally defective in that she offered no evidence that the permanent wave solution produced the injury complained of. In support of this proposition, they cite Gibbs v. Procter & Gamble Mfg. Co., 51 Ill App2d 469, 201 NE2d 473 (1964); Tiffin v. Great Atlantic & Pacific Tea Co., 18 Ill2d 48, 162 NE2d 406 (1959); Bowman v. Woodway Stores, 345 Ill 110, 177 NE 127 (1931); Watts v. Bacon & Van Buskirk Glass Co., 18 Ill2d 226, 163 NE2d 425 (1960). A review of these authorities indicate that they are distinguishable from the present case on their facts and issues.

In Gibbs, supra, plaintiff alleged contact dermatitis, its onset coming four years after starting to use defendant's

product, "Cheer." The evidence indicated that she was exposed to many products besides "Cheer" and that it was equally inferable that any one of many substances or products could have caused her injury. In Tiffin, supra, plaintiffs claimed injury as the result of eating tainted ham. They failed to establish, however, that the ham was tainted when it left defendant's control and, indeed, the evidence tended to show that it was equally inferable, if not more likely, that the ham became tainted after it left defendant's control. In Bowman, supra, plaintiff claimed injury as the result of drinking contaminated evaporated milk. Evidence produced by both sides showed it to be equally inferable that the injury could have been produced by the water with which the product was mixed. In Watts, supra, plaintiff sought recovery from a supplier of a plate glass door. However, the door was not within the control of the defendants at the time of the occurrence and, further, plaintiff pleaded specific negligence which he failed to prove. None of the four cases went to the jury on a res ipsa theory. Applying the rule announced in Pedrick v. Peoria & Eastern R. Co., 37 Ill2d 494, 229 NE2d 504 (1967), we cannot say on the state of this record that all of the evidence, discussed more particularly below, when viewed in its aspect most favorable to plaintiff so overwhelmingly favors the defendant that no contrary verdict based on that evidence could ever stand.

Defendants next contend that the doctrine of res ipsa loquitur was inapplicable to the case at bar. As a corollary, therefore, they argue that the court erred in giving jury plaintiff's instruction No. 5, (IPI 22.02 and 22.01), the res ipsa instruction and, accordingly, erred in refusing defendants' tendered instruction No. 12, (IPI 21.02), the instruction dealing with burden of proof in specific negligence cases.

■■ It is well settled in Illinois that to apply the doctrine of res ipsa loquitur, plaintiff must establish that the injury was caused by an agent or instrumentality

within the control or management of the defendant, that plaintiff is free from contributory negligence and that the result is one normally not occurring without negligence in the control or management of the agency or instrumentality. Metz v. Central Illinois Electric & Gas Co., 32 Ill2d 446, 207 NE2d 305 (1965); Erckman v. Northern Illinois Gas Co., 61 Ill App2d 137, 145, 146, 210 NE2d 42 (1965); Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520 (1959); Oakdale Bldg. Corp. v. Smithereen Co., 322 Ill App 222, 54 NE2d 231 (1944). Defendants contend that plaintiff did not establish the instrumentality which caused her injury, and thus, the doctrine of res ipsa is inapplicable. True, Dr. Weiss was not asked the specific question as to whether, in his medical opinion, the injury was related to the application of the solution. However, a reading of his entire testimony clearly demonstrates that his diagnosis was that of a chemical burn. The patient's history of the onset of injury afforded the basis for the Doctor's expressed conclusion that this burn resulted from the application of permanent cold wave solution. A treating physician is permitted to consider the history given to him by the plaintiff in arriving at his medical opinion. We feel the instrumentality in this case was sufficiently identified to meet the requirement necessary for the application of the doctrine of res ipsa loquitur.

Counsel for both sides have cited many cases accepting and rejecting the application of the doctrine in beauty shop injuries. Defendants rely on Kraus v. Becker, Ryan & Co., 265 Ill App 525 (1932), a case involving injury sustained by plaintiff while under an electric hair dryer. The court held the doctrine of res ipsa inapplicable because "if there were any evidence in the record to sustain the contention that the electric device was not properly administered, that fact would afford a basis for explaining the cause of plaintiff's injury and would amount to negligence. . . ." (Page 534.) (See Higgins v. Byrnes,

274 Ill App 440, 443 (1934).) Indeed, in Kraus, if there were evidence in the record to sustain the contention that the electric device was not properly administered, that evidence would afford the basis for a specific charge of negligence and plaintiff would not be required to utilize res ipsa in making out a case.

In this case the application of the permanent wave lotion was under the management of the defendants through their agent. The plaintiff took no part. Immediately after the application, plaintiff sustained injury, which, in the ordinary course of events, would not have happened if defendants were in the exercise of due care. Under these circumstances the doctrine of res ipsa loquitur applied and was properly before the jury on the pleading of general negligence.

We do not view the doctrine of res ipsa as an evidentiary short cut to excuse plaintiff's inability or unwillingness to go to the trouble of making out a prima facie case. Since the doctrine first evolved, the scope of pretrial discovery has been greatly expanded so that one of the reasons giving rise to the doctrine, i. e., superior knowledge on the part of defendant as to the cause of the injury has, in some measure, diminished. We are not prepared to say, however, that such circumstance tends to render the doctrine inapplicable. Rather, our view is that the doctrine raises a permissive inference of the defendant's negligence. Metz v. Central Illinois Electric & Gas Co., supra; Erkman v. Northern Illinois Gas Co., supra. Consequently, in such case, the defendant's motion for a directed verdict, at the close of the plaintiff's case, cannot be granted. While the burden of proof remains always with the plaintiff, the burden of refuting the evidence then falls to the defendant.

We deem it important to note that the defendants in this case offered no evidence to establish that the solution applied to the plaintiff's hair and scalp was in-

capable of producing her injury, nor that it was used in conformity with manufacturer's directions, nor that it was administered according to sound beauty shop practice. The defendants' evidence was insufficient to rebut the possible inference of negligence as a matter of law.

█ Defendants also call to our attention Ravo v. Lido, 17 App Div2d 476, 236 NYS2d 135, a New York case in which plaintiff claimed injury as the result of cold wave permanent solution being applied to her head. There the court held the doctrine of res ipsa inapplicable, and in its reasoning distinguishes the chemical action of a cold wave solution from injury resulting from the application of an electrical device, as the chemical solution was not within the exclusive control of the operator. However, the court went on to say, "In the absence of proof which eliminates all other possible agencies for which the defendant would not be responsible, the rule of res ipsa loquitur is not applicable to establish that the cause was chemical toxicity." We do not view the Illinois law as requiring elimination of all possible agencies by the plaintiff in order to establish a prima facie case. Heimsoth v. Falstaff Brewing Corp., 1 Ill App2d 28, at 35, 116 NE2d 193 (1954); Foster v. Union Starch & Refining Co., 11 Ill App2d 346 at 352, 137 NE2d 499 (1956). Defendants may introduce evidence of other possible causes and argue that evidence to the jury. We do not feel that the burden falls on the plaintiff to do so once the plaintiff has made out a prima facie case on the requirements above. We, therefore, hold the facts in this case warranted submitting the case to the jury on a res ipsa theory and, therefore, no error was committed in giving plaintiff's instruction No. 5 and refusing defendants' instruction No. 12.

██ Defendants' third point is that the verdict is against the manifest weight of the evidence. In order for us to so hold, an opposite conclusion from the verdict of

the jury must be clearly evidenced. Carter v. Winter, 50 Ill App2d 467, 200 NE2d 528 (1964), affd 32 Ill2d 275, 204 NE2d 755 (1965). Much of what we have said above is applicable to this point. Plaintiff made out a prima facie case under the doctrine of res ipsa. Defendants offered no testimony about the occurrence, and while the testimony of their medical witness regarding the nature of plaintiff's condition conflicted with the testimony of Dr. Weiss, we believe this conflict in the evidence was properly an issue fact to be submitted to the jury. Defendants rely on Mabee v. Sutliff & Case Co., Inc., 335 Ill App 353, 82 NE2d 63 (1948), affd 404 Ill 27, 88 NE2d 12 (1949). This was a res ipsa case, reversed because the verdict was against the manifest weight of the evidence. However, this case is clearly distinguishable inasmuch as in that instance the instrumentality producing the injury was in plaintiff's control at the time of the occurrence. We do not find it persuasive on the facts of this case.

▆▆ ▆▆ Defendants claim further error in submitting as an element of damage plaintiff's purchase of a wig, allowing plaintiff's condition to be exhibited to the jury, and improper cross-examination of defendants' investigator by plaintiff's counsel. We find no prejudicial error in the trial court's rulings on these questions.

For the foregoing reasons, the judgment of the trial court is affirmed.

Affirmed.

ABRAHAMSON, and DAVIS, JJ., concur.