Robert MUSGRAVE, Plaintiff-Appellee,

· v.

UNION CARBIDE CORPORATION,
Defendant-Appellant.

Robert MUSGRAVE, Plaintiff-Appellant,

v.

PROCESS ENGINEERING, INC., et al.,
Defendants-Appellees.

Nos. 73–1283, 73–1284.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 8, 1974.

Decided March 6, 1974.

226

Richard P. Komyatte, Hammond, Ind., William N. Anthony, Chicago, Ill., for Musgrave.

Elmer F. Slovacek, Francis D. Morrissey, Caryl P. Bonotto, Chicago, Ill., for Union Carbide & Process Eng.

Before CASTLE, Senior Circuit Judge, PELL, Circuit Judge, and GRANT, District Judge*.

CASTLE, Senior Circuit Judge.

Defendant Union Carbide Corporation appeals from a jury verdict for plaintiff Robert Musgrave in a negligence action involving personal injuries sustained when the hitch connecting a mobile nitrogen converter trailer to the tractor which Musgrave was driving sheared off, causing the trailer to strike the tractor. On appeal, Union Carbide asserts that Musgrave failed to introduce sufficient evidence to prove that Union Carbide committed the acts alleged in the amended complaint: furnishing Musgrave a trailer to which it had affixed a defective and unsafe hitch assembly, and using the trailer hitch assembly in an unsafe manner. Union Carbide further argues that Musgrave failed to sustain the burden of proof required to show that such acts were the result of negligence or were the proximate cause of Musgrave's injury, and that the court incorrectly instructed the jury on negligence. Union Carbide also contends that the trial court erroneously sustained an objection barring Union Carbide from commenting on matters mentioned by a codefendant during closing argument and failed to direct the jury to render a complete verdict respecting a codefendant. We have considered these issues and we affirm the judgment on the jury verdict.

* Honorable Robert A. Grant, Senior District Judge for the Northern District of Indiana, sitting by designation.

Musgrave was a truck driver employed by the McKeown Transportation Co., a contract carrier for Union Carbide. On July 3, 1969, Musgrave's dispatcher ordered him to take a mobile nitrogen converter trailer from Union Carbide's East Chicago, Indiana plant to Kankakee, Illinois. Musgrave took the one McKeown tractor equipped with a pintle hook compatible with the hitch assembly on the trailer and drove to the Union Carbide plant, where he positioned the trailer and the tractor and then lowered the lunette eye of the trailer on the tractor's hook. When he observed a proper fit, Musgrave triggered the safety catch locking the mechanism, connected the safety chains between the trailer and the tractor, inspected the rig, and began his journey. While driving on Interstate 57 near Kankakee, he noticed that the trailer was weaving in a pattern about two feet to the left and to the right of the tractor. He attempted to bring the rig to a gradual halt in order to tighten the safety chains. At that point, the trailer broke loose from the tractor, spinning the tractor completely around. The trailer then fell and struck the front end of the tractor. Following the impact, Musgrave noted that while the lunette eye was still locked in the catch of the tractor hook, the stem connecting the eye to the trailer had separated.

At trial, expert testimony established that two sources of metal fatigue resulted in the stem separation. First, the mounting plate on the trailer through which the threaded lunette stem passed was excessively thick, preventing the castle nut on the other side of the plate from being fully tightened on the lunette stem when the stem was inserted through any one of four lunette holes in the mounting plate. (The holes were arranged vertically to permit adjustment of the lunette to fit tractors of varying heights.) Second, since none of the four holes in the mounting plate had been chamfered, when a lunette stem was inserted through a hole in the mounting plate the jagged edge of the hole created

a stress concentration point where the eye of the lunette joined the stem (the situs of the stem separation in the accident).

The trailer in question was designed and manufactured for Union Carbide by Process Engineering, Inc., a codefendant in this action. Process Engineering stipulated that it had exercised exclusive control over the design and manufacture of the trailer prior to its sale to Union Carbide. However, it denied that it had manufactured the hitching assembly found on the trailer. Union Carbide offered testimony that it had made no modifications in the hitching assembly, that it had performed no maintenance on the hitch, and that the mechanism was essentially in the same condition when the accident occurred as when the trailer arrived from Process.

Confronted with denials of responsibility from the only two logical sources who could possible explain the attachment of the defective mounting plate to the trailer, Musgrave sued both Process Engineering and Union Carbide and properly presented his alternative theories of liability to the jury, Schmidt v. Archer Iron Works, Inc., 44 Ill.2d 401, 402–403, 256 N.E.2d 6 (1970): Either Process Engineering affixed the mounting plate to the trailer during its manufacture or Union Carbide removed the manufacturer's mounting plate and attached a defective plate. Musgrave necessarily relied substantially on proof by circumstantial evidence, for in cases such as this, the plaintiff rarely has direct proof of what occurred in the manufacturer's or consumer's plants. *Cf.*, Grey v. Hayes-Sammons Chemical Co., 310 F.2d 291, 302 (5th Cir. 1962). Such circumstantial evidence is clearly sufficient, however, to provide the basis for a finding of negligence. As this court stated in Gearhardt v. American Reinforced Paper Co., 244 F.2d 920, 924 (7th Cir. 1957):

> Generally speaking, direct and positive testimony to specific acts of negligence is not required to establish it.

Circumstantial evidence is sufficient, either alone or in combination with direct evidence. Circumstantial evidence may contradict and overcome direct and positive testimony. The limitation on its use is that the inference drawn must be reasonable. But there is no requirement that the circumstances, to justify the inferences sought, negative every other positive or possible conclusion. The law is not so exacting that it requires proof of negligence or causation by testimony so clear that it excludes every other speculative theory.

Process Engineering's design engineer testified that the drawing plans for this trailer and other identical trailers specified the utilization of a Holland Hitch Manufacturing Co. lunette as well as a three inch thick mounting plate with chamfered holes in the hitch assembly. He further stated that a Holland Hitch lunette, model number 1263, was used on this particular trailer and that the engineering procedure which called for chamfering the mounting plate holes had been followed in the production of this trailer. Holland Hitch's assistant general manager examined the fractured lunette, and based on the shape of the eye, the absence of a die forging number, and the indications of the manner in which the lunette was cut to size, he stated that the lunette attached to this trailer which sheared off and caused the accident was not manufactured by his company. The clear inference from this testimony was that while the trailer was manufactured by Process Engineering, Process Engineering neither manufactured nor affixed the hitch found on the trailer; therefore, Union Carbide must have attached the hitch assembly to the trailer.

■ Moreover, evidence of Union Carbide's post-accident behavior tended to corroborate Process Engineering's denial of the manufacture of the defective mounting plate and to suggest that Union Carbide was responsible for the attachment of the faulty plate. At the time of the accident, the trailer had only been pulled a total of 175 miles during eight and one-half months of use. Yet Union Carbide, which had expended $11,240 for the purchase of the trailer only months before the accident, did not notify Process Engineering that the hitch assembly on its relatively new trailer had failed or that such failure had caused damage to Union Carbide's trailer, damage to McKeown's tractor, and personal injuries to Musgrave. Rather, Union Carbide simply welded the same lunette to the mounting plate and continued to use the trailer. It would strain credulity to believe that a knowledgeable and sophisticated corporation such as Union Carbide would magnanimously relieve Process Engineering of the cost of repair resulting from the extremely premature failure of new but obviously defective equipment, if in fact the hitch assembly had been manufactured and installed by Process Engineering. In contrast, Process Engineering (which had previously tested the safety factors incorporated into its design of the mounting plate to eliminate stress and had never received any report from owners of its trailers complaining of faulty hitches) made no modification of the design of the mounting plate or the method of installation of lunettes subsequent to the accident.

Further, circumstantial evidence suggested not only that Union Carbide affixed the hitch assembly to the trailer but also that the hitch assembly which it installed had been previously used. It was undisputed that the trailer was first put in operation at the East Chicago plant and that Union Carbide's contract carrier, McKeown, had only one tractor specially equipped to pull this trailer. It was also undisputed that given the particular height of the tractor, the tractor was properly aligned with the trailer only when the lunette was inserted through the fourth (e. g., the bottom) hole of the mounting plate; any other position would have imposed undue stress on the hitch assembly. Yet, substantial evidence indicated that the lunette had also been inserted in both the

top (*i. e.*, first) hole, as well as the third hole. Thus the jury could reasonably infer under the circumstances· that the hitch had been previously used on another tractor-trailer combination, and therefore that the user, Union Carbide, not the manufacturer, affixed the defective hitch assembly to the trailer.

There was also sufficient evidence to warrant a finding that Union Carbide improperly used the trailer hitch assembly. Process Engineering designed the hitch assembly so that the lunette could be bolted on the back of the mounting plate by means of a castle nut through which a cotter key could then be inserted. Process Engineering additionally provided an uninstalled lock washer as a backup safety device to be used only in the event the cotter pin broke. However, both a washer and a cotter key were found installed on Union Carbide's trailer's hitch assembly. Expert testimony established that the combination of both the key and the washer prevented the proper tightening of the castle nut on the lunette stem, producing a looseness in the assembly which contributed to the stress causing the metal fatigue. This evidence also supports the inference that Union Carbide changed the trailer hitch after its manufacture, replacing it with another which did not conform to the one supplied by the manufacturer.

■ While the jury might possibly have inferred from the record that Process Engineering, rather than Union Carbide, attached the defective hitch assembly, it is uniquely the jury's function to choose from conflicting inferences those which it deems most reasonable, and where, as here, there is an evidentiary basis for the verdict of the jury, an appellate court will not reweigh the evidence or reject properly deducible inference. *E. g.*, Greyhound Corp. v. Dewey, 240 F.2d 899, 902 (5th Cir. 1957); Knapp v. Styer, 280 F.2d 384, 386 (8th Cir. 1960). The jury's apparent disregard of Union Carbide's direct denial of responsibility for the hitch assembly is an appropriate exercise of its discretion

in reaching a verdict, for it is well-established that "even purely circumstantial evidence may properly be found to outweigh conflicting direct testimony." United States v. Ebinger, 386 F.2d 557, 560 (2d Cir. 1967); Gearhardt v. American Reinforced Paper Co., *supra*. We therefore conclude the jury properly determined on the basis of the record that Union Carbide affixed the defective hitch assembly to the trailer in question and used the assembly in an improper manner.

■ Union Carbide submits that even if there were sufficient evidence from which the jury could determine that it had affixed the defective hitch assembly to the trailer, Musgrave failed to prove negligence, because there was no showing that Union Carbide either knew or should have known of the defective hitch on the trailer which it supplied to Musgrave. *E. g.*, Witt v. John Hennes Trucking Co., 49 Ill.App.2d 391, 199 N.E.2d 231 (1964); Restatement (second) of Torts § 392. However, the law in Illinois respecting the standard of liability for a supplier of chattels is clear:

> A supplier of chattels is not ordinarily liable to third parties unless the article is inherently dangerous. . . . However, such supplier may be liable to a person injured by an article which, while not dangerous when properly made, became dangerous when defectively made [citations omitted]. To establish liability on this ground, however, there must be some evidence that the defendant either should have known of or negligently caused the defect in question. Watts v. Bacon & Van Buskirk Glass Co., 18 Ill.2d 226, 231–232, 163 N.E.2d 425, 428 (1959).

As the requirement is phrased in the disjunctive, it was unnecessary that Musgrave prove Union Carbide either knew or should have known of the defective hitch (a standard appropriate for a mere passive supplier), since Musgrave alleged and proved that Union Carbide actively and negligently caused the de-

fect resulting in the accident by affixing to the trailer supplied him an obviously faulty mounting plate, with jagged edges around its unchamfered lunette holes and with an excessive width which prevented the proper tightening of the castle nut on the lunette stem. That such proof is sufficient to establish negligence is well-settled in case law, both because of a presumption of notice arising from the affixation of the obviously defective part, White v. St. Louis Transfer Co., 161 Ill.App. 133 (1911) (employer negligently furnished a wagon, which he had made with a defective hitch, to an employee), Kozowski v. Ostrowski, 163 Ill.App. 199 (1911); and because of a reasonable inference that the hitch assembler and affixer negligently failed to use reasonable care in "manufacture" when a hitch with structural defects sheared off a relatively new trailer. *See,* Anderson v. Linton,[1] 178 F.2d 304, 309 (7th Cir. 1949) (in a personal injury suit involving the shearing off of a trailer hitch, an allegation that the hitch was structurally weak was held sufficient to state a claim of negligence against the hitch assembler and affixer for failure to use reasonable care in its "manufacture"). Restatement (Second) of Torts § 395.

■■ Union Carbide further submits that even if it were negligent, Musgrave failed to demonstrate that his injury was proximately caused by Union Carbide's acts. Illinois law has determined that proximate cause exists when the injury alleged is the natural and probable result of the negligent act or omission and is of such a character that an ordinarily prudent person ought to have foreseen it as a likely result of the negligence. *E. g.,* Neering v. Illinois Central R. Co., 383 Ill. 366, 380, 50 N.E. 2d 497 (1943). On the facts of this case, it is clear that the injury satisfies the proximate cause requirement; indeed, it would be hard to imagine a bet-

ter example. Union Carbide negligently furnished a trailer with a defective hitch to the driver of a tractor. As a result of the shearing off of the trailer hitch, the driver was injured. The injury is plainly neither so freakish nor fantastic as to preclude the finding of liability for negligence.

Union Carbide contends that the trial court erred in refusing its amendment to the jury instruction on the standard for liability and argues that, as a result it was subjected to the same type of liability asserted against Process Engineering; namely, strict liability. In the following instructions tendered by Musgrave and subsequently given by the court to the jury, Union Carbide proposed the following bracketed, italicized words:

The plaintiff claims, with respect to the occurrence, that while he was in the exercise of ordinary care, the defendants were negligent in one or more of the following respects:

As to the defendant Process Engineering, Inc.; In the design, manufacture, mounting and inspection of the hitch assembly to the mobile convertible trailer.

As to the defendant Union Carbide Corporation; In the furnishing of a mobile convertible trailer to the plaintiff which [*Union Carbide Corporation knew or reasonably should have known*] had affixed to it a defective and unsafe hitch assembly. (Instruction at Tr. 776, objection at 733.)

■ As Union Carbide was a supplier furnishing a hitch which was dangerous when defectively made, since the jury's instructions permitted it to reasonably conclude that Union Carbide negligently caused the defect resulting in Musgrave's injury, it was unnecessary for the instructions also to permit the jury to find that Union Carbide knew or should have known of the defect in order to establish liability for negli-

---

1. While the court found Iowa law applicable in that case, it actually applied principles embodied in the Restatement of Torts, on which Illinois courts also rely. *See, e. g.,* Biller v. Allis Chalmers Mfg. Co., 34 Ill. App.2d 47, 180 N.E.2d 46 (1962).

gence, under the rule of Watts v. Bacon & Van Buskirk Glass Co., *supra.*

 Furthermore, the instructions given the jury neither subjected Union Carbide to the same theory of liability asserted against Process Engineering nor applied a strict liability standard to Union Carbide. Process Engineering was sued on theories of strict liability, breach of warranty and negligence. The trial court expressly instructed the jurors that only the negligence theory was asserted against both Union Carbide and Process Engineering. The court delineated Musgrave's separate allegations of negligence: as to Process Engineering, in the design, manufacture, mounting and inspection of the hitch assembly to the mobile converter trailer; as to Union Carbide, in the furnishing of a mobile converter trailer which had affixed to it a defective and unsafe hitch assembly. The court then instructed the jury that in order to establish negligence, Musgrave must prove that he was using ordinary care for his own safety, that the defendants acted negligently in the above-described manner, and that such negligence was the proximate cause of the accident. The court proceeded to define negligence as "the failure to do something which a reasonably careful person would do or the doing of something that a reasonably careful person would not do, under circumstances similar to those shown in the evidence." Indeed, not only was the difference between theories of strict liability and negligence driven home in the instructions, but in closing argument counsel for Union Carbide also apprised the jury of "the important distinction being made against Process Engineering and the claim being made against us. As against us, . . . the plaintiff must prove that we were careless; that we did something negligent, which caused this accident. . . ." This language is remarkably similar to that used by the Illinois Supreme Court in the *Watts* case to describe the burden of proof necessary to establish liability in such negligence cases. Taking the instructions as a whole and viewing them in light of the evidence presented and the closing argument, we are satisfied that the instructions relating to Union Carbide showed no tendency to confuse or mislead the jury regarding the applicable law of negligence. *Cf.,* Oliveras v. United States Lines, 318 F.2d 890, 892 (2d Cir. 1963).

 Union Carbide claims that the trial court erred in sustaining Process Engineering's objection to Union Carbide's remark in its closing argument in response to an inference raised by Process Engineering during its final argument that other defendants present at a May 1972 inspection of the defective lunette had conspired against it and that it had been deprived of an equal opportunity to conduct discovery proceedings. The objection, which followed Union Carbide's statement that the inspection was pursuant to a court order in which Process Engineering had the same opportunity to participate, was sustained on the ground that there was no such evidence in the record. We find that the court's ruling was correct, for it is well-settled that it "is improper in closing argument to make reference, over objection, to matters not in evidence," O'Boyle v. Greco Excavating Co., 9 Ill.App.3d 234, 240–241, 292 N.E.2d 90 (1972), and the discovery proceedings were not introduced into the trial record. If error was committed, it was not in the court's ruling on the objection but rather in Union Carbide's failure to object to Process Engineering's mentioning, in its prior final argument, matters pertaining to pretrial discovery which were not disclosed in the evidence. *Cf.,* Flewellen v. Atkins, 99 Ill.App.2d 409, 241 N.E.2d 667 (1968). Having waived its right to object to the jury's hearing of matters not in evidence, Union Carbide was properly refused permission by the court to seek correction of such error by raising extra-evidentiary issues itself.

 Finally, Union Carbide claims that the trial court erred in failing

to direct the jury to return a complete verdict specifically deciding the question of the liability of its codefendant, Process Engineering. Union Carbide argues that this failure was highly prejudicial to it, because the jury could not rationally find Union Carbide negligent without also finding Process Engineering liable. It is firmly established in Illinois law that when a court receives a verdict in irregular form, it is proper for the court to construe the intent of the jury, considering the record before it, and to enter judgment without resubmission to the jury. *E. g.*, Bencie v. Williams, 337 Ill.App. 414, 86 N.E.2d 258, 260 (1949). In a personal injury suit alleging negligence against multiple defendants, Illinois courts determined that a jury verdict which simply found one codefendant negligent necessarily exculpated the remaining defendant, for the finding that the second defendant was not liable was "reasonably implicit" in the jury verdict. Sesterhenn v. Saxe, 88 Ill.App.2d 2, 232 N.E.2d 277 (1967). Similarly, given Musgrave's theories of liability, the jury verdict in this personal injury action finding Union Carbide negligent, coupled with special interrogatories to which the jury replied that Union Carbide was negligent while Musgrave was not contributorily negligent, implicitly exonerated Process Engineering, and the trial court properly so found. Union Carbide suggests that the express and implied findings are inconsistent. However, the findings could only have been inconsistent if Musgrave had represented Union Carbide as a mere conduit in which case its liability could have been predicated only on knowledge of the defect, which would have implied that the defect had been caused by Process Engineering. But Musgrave never portrayed Union Carbide as a passive conduit. Rather, Musgrave consistently argued that either Union Carbide or Process Engineering negligently caused the accident by affixing a defective hitch assembly to the trailer. Therefore, the jury verdict finding Union Carbide negligent necessarily implied that Process Engineering was not liable for Musgrave's injury. Thus, in exculpating Process Engineering, the court, without prejudice to Union Carbide, correctly announced the logical implication of the jury verdict.

We affirm the judgment on the jury verdict.[2]

Affirmed.

---

2. In the cross-appeal, No. 73–1284, Musgrave requested that if the judgment against Union Carbide were to be reversed, the judgment in favor of Process Engineering also be reversed in the interests of justice, to permit the remanding of the case for a new trial as to all parties. Because of our holding in No. 73–1283, we need not reach the questions presented in the cross-appeal.