Mark T. Bond, as Administrator of the Estate of Michael T. Bond, Deceased, Plaintiff-Appellant, v. City of Champaign, a Municipal Corporation, Defendant-Appellee.

Gen. No. 11,186.

Fourth District.

August 31, 1970.

Rehearing denied September 22, 1970.

Summers, Watson and Kimpel, of Champaign, for appellant.

Phillips, Phebus & Tummelson, of Urbana, Albert Tuxhorn and James W. Evans, of Champaign (Hurshal C. Tummelson and George G. Bryan, of counsel), for appellee.

SMITH, P. J.

Plaintiff appeals from a judgment entered in favor of the defendant on a jury's verdict finding the defendant not guilty in the operation of its street lighting system. Plaintiff's intestate, a university student, came to his death by electrocution when he stepped on a metal manhole cover while wading at a street intersection which had been flooded during a storm. The suit was based on one count charging res ipsa loquitur and a second count charging specific acts of negligence as follows: (1) Failed to have inspected said manhole or handhole and the wiring within the same and (2) failed to have said manhole or handhole and the wiring within the same in a safe condition.

Following a severe storm, the intersection at Fourth and Green Streets in Champaign was flooded. Decedent, along with some fraternity brothers, went down to the intersection, helped push some stalled cars and played around in the water. A photographer was taking pictures. To get into the act, the decedent picked up one of his fraternity brothers on his shoulders and walked toward one corner of the intersection. In doing so, he stepped on a water-covered manhole cover which was electrified and received the electric shock that brought about his death. The manhole was referred to as a "pullbox."

The manhole cover was about 18 inches square, weighed about 50 pounds, and was constructed of cast iron. It was flush with the street surface and covered a concrete box about 28 inches in depth and 18 inches in width. A plastic conduit for electric wires entered this box from either side below the ground surface and there were loose insulated wires looped within the box. The loops of wire ordinarily did not touch the top of the box. After the incident in question, one loop in this particular box was bare of insulation and touched the metal cover upon which the decedent stepped. When there was trouble with the street lighting system, the manhole cover

was removed—it could not be removed except with an instrument or hook used for that purpose—and one could take hold of the wires and pull them through the plastic conduit either for replacement or repair. The system had been installed by the city about two years before. The boxes had not been inspected, and the system used was a system customarily used throughout the United States. Immediately prior to the occurrence, there had been a heavy rainstorm in the city accompanied by severe thunder and lightning. The evidence further shows that this particular intersection over a period of twenty years had been frequently flooded.

■ The plaintiff first complains that the court withdrew from the jury plaintiff's charges of negligence that (a) defendant maintained a certain manhole equipped with electric wiring which was bare causing the lid to become electrified, (b) failed to warn the decedent of the system and its condition, and (c) permitted the decedent to be and remain in a position of danger without warning. There is no error in refusing to submit these three issues to the jury. There is no evidence that the city knew of the condition of this pullbox or that the pullbox cover was electrified prior to the storm. There is no evidence that the city was aware of any danger not readily visible to the decedent, that is, that the intersection was flooded. So far as actual knowledge was concerned, the defendant city and the decedent had equal actual knowledge of whatever danger was present. By this we do not imply contributory negligence on plaintiff's part. In addition, by submitting to the jury an issue of failure to inspect and a failure to maintain the pullbox in a safe condition, the only issues supported by the evidence were clearly and precisely presented.

The plaintiff likewise asserts that the court erred in permitting defendant's counsel to argue an Act of God to the jury without any evidentiary basis to show that it was the exclusive cause of the death. We are in no posi-

tion to pass on this assertion. The record indicates that some five instructions dealing with lightning and the storm as Acts of God were refused by the trial court, that it admitted evidence of these conditions and indicated that it would permit counsel to argue them. None of the arguments is reported or preserved in this record, and whether or not the defendant did or did not argue, it is thus not before us. The plaintiff argues that naturally the defendant must have argued the evidence because it was about the only evidence offered by the defendant, and no one would be naive enough to believe that he didn't. This does not solve our problem even if he did. We don't know whether they were argued as attendant circumstances or as Acts of God. We don't know what was said or whether it was proper or improper under the evidence in the record.

The pullbox was installed by the City of Champaign about two years before the occurrence. After the occurrence, a bare wire with the insulation burned off was touching the lid of the pullbox. The city employee testified that it would not have been safe to have installed the wire in this fashion, that normally it would extend to the bottom of the pullbox rather than against the top and that the wire would generally loop downward. Asked whether or not he had been in or inspected this particular box before, he said "he just didn't know, but they had been in a lot of them."

That the manhole cover was electrified at the time the decedent stepped on it was established. When it became electrified raises an issue of fact. Was the wire installed with one loop against the manhole cover and thus negligently installed by the city? Was the system struck by lightning days or months before, the insulation on the wires burned off and the lid then became electrified without knowledge on the part of the city? If it had become so electrified months before, would a look into the box by the city have disclosed the defect? If the lightning struck

the system causing this wire to jump—and there was testimony that it might or could do so—did the electrification of the manhole cover occur in a matter of minutes immediately before the accident? There was evidence that lightning struck a tree in the next block. There was evidence that a concrete box of this type is self-grounding and a ground wire is not required, while had it been of metal, a ground wire would have been required. The record further shows that neither during nor immediately following the occurrence was there any diminution or weakening of the lighting system and that the amount of electricity which would be lethal to an individual standing on a metal plate in dirty water would be much less than was required to activate the lighting system. There is no evidence that this wire was installed against the top of the box, although there was testimony that had it been so installed it would have worn off or fried off and the circumstances could be accounted for in this fashion. On the other hand, the testimony of the defendant's expert was that the lightning would "burst out" and would itself move the wire in the pullbox.

On the question of inspection, defendant's expert explained the function of the manhole or pullbox and that it was the usual and ordinary practice all over the country to employ handholes or pullboxes of the kind used by the City of Champaign. He further testified that these installations were not inspected and that they were not inspected because there was no purpose in such a periodic inspection, as there would be nothing to see, with the exception of a very small segment of the entire system. The charge that these pullboxes violated the National Electric Code as testified to by the plaintiff's witness, Roberts, is valueless because the Code requires a handhole or pullbox to be grounded when it is of metal. The pullbox in this case was under ground, was made of concrete and was self-grounded.

321

■ Two witnesses for the defendant on examination of the defective wires after the accident testified that that type of damage to the wires would be caused by a stroke of lightning striking the system. It is thus apparent that a directed verdict on this record would be inappropriate and that the answer to the questions on the specific charges of negligence is patently in the area of jury dominion. We cannot say that the jury's verdict on these specific charges is manifestly against the weight of the evidence for the very simple reason that on some of the questions there is no evidence and on the others the evidence is conflicting.

The plaintiff relies upon the doctrine of res ipsa loquitur and strongly upon the case of Moore v. Achison, T. & S. F. Ry. Co., 28 Ill App2d 340, 171 NE2d 393, which involved two trains trying to run on the same track and resulted in a collision. By way of explanation, the defendant established that the train had gone through a rainstorm some 15 to 18 miles from the scene of the accident and that perhaps lightning had hit the engine disabling all of the employees. A crewman, however, testified that no lightning had struck the train. As a consequence, in that case the court felt that reasonable minds could scarcely conclude that the collision was a result of lightning, as there was no evidence that lightning had struck the train or that it had disabled the engineer or fireman, if it did. That case is considerably different from the case at bar. In this case, there was expert testimony that the damage to the wire was a result of lightning. Two witnesses so testified. There was evidence of a severe lightning storm in the area during the day of the occurrence and that a tree a block away was struck by lightning. The course this case took during the trial is a typical res ipsa loquitur case. The accident that here occurred is an unusual event and one where it might reasonably be said that it would not occur except for the negligence of someone or caused by an intervening agency. From the evidence in

this case it is clear that the water alone was not the cause of death. The water alone, plus walking on top of this manhole had it not been electrified, would not have caused death. It is the combination of these two circumstances, plus electrification, which was the cause of the injury and death in this case.

 When a set of circumstances is presented which suggests that the injury or damage normally would not occur without the negligence of someone, then it becomes the duty of the defendant to refute such circumstantial evidence and such conclusion by evidence. In the instant case, the defendant offered evidence that there was no negligence in the installation of this instrumentality, that there was no negligence in failure to inspect this instrumentality, that there was no negligence in failure to ground this instrumentality, and that the instrumentality itself and the city's maintenance of it followed established practice throughout the United States. Established practice is not per se controlling. Darling v. Charleston Community Memorial Hospital, 33 Ill2d 326, 331, 211 NE2d 253, 257. The defendant then offered evidence indicating the probability that lightning had struck the system and had caused the damage to the wires in the particular manhole and it, in turn, electrified the cover. Having done so, it then becomes the province of the jury to determine whether or not the probabilities appearing from the evidence support negligence or nonnegligence. Erckman v. Northern Illinois Gas Co., 61 Ill App2d 137, 210 NE2d 42; Traylor v. The Fair, 101 Ill App2d 268, 243 NE2d 300. We think this case falls squarely within the doctrine announced in Traylor, that is, that the facts occurring in the record warranted submitting the case to a jury on a res ipsa loquitur theory and that there was no error in so instructing the jury nor was there any error in permitting the defendant to introduce evidence of other possible causes such as lightning and arguing that evidence to the jury. As stated in Prosser:

". . . This means that the inference of negligence to be drawn from the circumstances is left to the jury. They are permitted, but not compelled to find it. The plaintiff escapes a nonsuit, or a dismissal of his case, since there is sufficient evidence to go to the jury; but the burden of proof is not shifted to his shoulders, nor is any 'burden' of introducing evidence cast upon him, except in the very limited sense that if he fails to do so, he runs the risk that the jury may, and very likely will, find against him." Prosser, Law of Torts, § 40, p 233, 3d Ed.

In the case at bar, when this evidence is finally distilled reasonable minds might well disagree as to whether the cause of death here is traceable to the negligence of the defendant or to the condition caused and created by the lightning. Under such circumstances, it is for the jury to draw the inference and to provide the strength it will attach to it. This it has done. We have carefully considered other errors raised in the case and find that they are either without merit or are of insufficient weight to warrant a new trial. The judgment of the trial court is accordingly affirmed.

Affirmed.

TRAPP and RICHARDS, JJ., concur.